ELLIS H. ROBERTS & Co., Appellants, *v.* JOHN BUCKLEY et al., Impleaded, etc., Respondents.

An assignment for the benefit of creditors must be interpreted like other instruments, according to the intent of the parties, and if possible such a construction given it as will sustain rather than defeat it.

The *onus* is upon the party charging fraud in such an instrument to show affirmatively some illegal provision, or some act consciously and purposely done which is inconsistent with an honest purpose.

A direction in the assignment for the payment of a debt at a greater amount than is justly due, will not invalidate the assignment in the absence of a fraudulent intent.

When the instrument is assailed as fraudulent because it provides for the payment of a fictitious debt, it must appear that the assignor, with a fraudulent purpose in view, knowingly and consciously directed the payment of a claim which to his knowledge had no existence, either in whole or in some substantial part.

The question as to the validity of an assignment is to be determined by the facts existing at the time it was made, and, if when delivered it represented an honest purpose and was made in good faith, fraud cannot be fastened upon it thereafter by any act or statement, whether verbal or written, of the assignor.

While the rule that a person is presumed to intend the natural and necessary consequences of his acts; and so, where he acts voluntarily, and the act necessarily operates to defraud others, that he intended the fraud, this is not a conclusive presumption, but may be removed by evidence that the act was the result of mistake or inadvertence, and that the intention was innocent.

An assignment for the benefit of creditors preferred and directed the assignee to pay in full certain debts enumerated in a schedule annexed, with interest. In the schedule M. was named as a creditor. In a column headed "Form of debt" was this statement "account and notes which assignors are unable to describe." The amount was stated to be "about $12,000." In a column headed "Date for interest," were specified six items, with different dates attached, amounting in all to $12,000; then followed this statement, "as near as assignors are able to state."

Twenty days after the assignment was made the assignors filed the inventory and schedules required by the statute (§ 3, chap. 466, Laws of 1877). In these the amount of the debt to M., the several items thereof, with the dates attached, were given, as stated in the assignment, but without any qualifying words. In an action to set aside the assignment because of alleged fraud, various items of indebtedness to M., consisting of notes and checks, were produced and proved, and the referee found that the assignors were indebted to him thereon at the date of the assignment in the sum of $12,656.38. It appeared that one item of $1,500 named in the schedule, had been paid and was inserted by mistake; also, that the obligations produced differed in dates and amounts, in some cases slightly, in others materially, from the dates and amounts stated in the schedule. These facts also appeared and were found by the referee: When the assignment was made M. was in the west, in the service of the government. The firm of attorneys who drew the assignment obtained the data relating to the debt in question from M.'s attorneys. The assignment was then drawn and presented by a member of said firm to the assignors for examination; they were unable to describe the debt with accuracy; some of the books upon which it appeared were not in their possession, and some portion of it was for moneys paid by M. to third parties for the benefit of the assignors, and thereupon the qualifying words were inserted in the schedule. The other member of said firm, who drew the assignment, and who had not been informed of the change made, drew the inventory from the same data used by him in drawing the assignment, without inserting the qualifying words; he intending in both papers to describe the same debt and in the same way. The referee found that the assignors verifying the inventory intended to set forth the indebtedness without stating the precise items and without intending to modify or change the statement contained in the assignment, and acted in good faith without any intent to hinder, delay or defraud creditors. *Held*, that the preference and so the assignment were properly adjudged to be valid; that the preferred creditors had the right to prove any honest debts to the extent of about $12,000, irrespective of the amounts and dates given in the schedule; and that the variance shown was immaterial.

*Roberts* v. *Vietor* (130 N. Y. 585), distinguished.

On the same day the assignment was recorded a judgment in an action brought by M. against the assignors was entered upon an offer of judgment. The judgment was in excess of the real indebtedness by over $800. The complaint asked relief against this judgment. The referee found that that amount was excessive but not fraudulent, and that it was rendered in good faith, for the purpose of securing an honest debt. The judgment was subsequently, on application to the court, modified and reduced to the true amount. *Held*, that the court had power to so correct the judgment; also, that even if it had not been corrected, it was good for the sum actually due.

After a former trial in this action and a reversal on appeal of the judgment rendered therein in favor of the contesting creditors, the County Court made an order amending the inventory *nunc pro tunc,* so as to conform substantially to the statement of the debt in the assignment. *Held,* that the County Court had power to make the order, and when made it was as much part of the assignment as the inventory which it modified, and as the referee found that it could not operate, as against the contesting creditors, to impair or prejudice any rights or liens which they had acquired against assigned property prior to the entry of the order, the creditors were protected and without any legal or just ground for complaint.

Reported below, 80 Hun, 58.

(Argued January 30, 1895; decided March 5, 1895.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department, entered upon an order made July 10, 1894, which affirmed a judgment in favor of defendants entered upon the report of a referee.

The nature of the action and the facts, so far as material, are stated in the opinion.

*George F. Danforth* and *James Dunne* for appellants. The former decision of this court should have been treated by the court below as a final adjudication of the invalidity of the assignment. (130 N. Y. 597.) Nor is the case changed to the advantage of the defendants by the additional or new evidence given on the second trial. (*Taylor* v. *Ranney,* 4 Hill, 619; *McCormick* v. *Wheeler,* 11 S. & R. 114; 119 U. S. 589–601; *Porter* v. *Williams,* 94 N. Y. 142.) Neither was the oral evidence competent. (Laws of 1887, chap. 466, § 3.) The evidence in explanation or to show a " mistake " in the assignment or schedules is inadmissible under the pleadings. (130 N. Y. 585.) The judgment of March 18, 1886, in favor of D. G. Major against Buckley and Shirley should be vacated and set aside as fraudulent and void as against Vietor & Achelis. (130 N. Y. 601; *Dexter* v. *Irvine,* 133 id. 551; *Smith* v. *Mayor, etc.,* 37 id. 518; 116 id. 410; *Simons* v. *Goldback,* 123 id. 637 ; *Burch* v. *Newbury,* 10 id. 396; *Dash*

v. *Kleek*, 7 Johns. 490.) If a court of equity has the power to disturb, in favor of one creditor, a lien acquired by another creditor by legal proceedings upon either a fund or property, it does not exercise it. It leaves the question of preference to be settled by the legal rule. (*Bank of Rochester* v. *Emerson*, 10 Paige, 359; *De Peyster* v. *Hildreth*, 2 Barb. Ch. 109; *Buchan* v. *Sumner*, Id. 165; *Burchard* v. *Phillips*, 11 Paige, 66; *Sutherland* v. *Bradner*, 39 Hun, 134; 116 N. Y. 410; *Knight* v. *Bunn*, 7 Ired. 77; 8 Ired. Eq. 82; Jones' Eq. [N. C.] 24; *Simons* v. *Goldback*, 123 N. Y. 637.) The assignment is valid against every one save Vietor & Achelis, for they only attacked it. (54 Hun, 461, 462.) By the appeal of Vietor & Achelis, only so much of the judgment was taken to the Court of Appeals as aggrieved Vietor & Achelis. And although the language of the remittitur is broader, it should be understood as meaning the judgment so far as it affects Vietor & Achelis, who by adverse proceedings had acquired a lien. (*Morris* v. *Sickly*, 137 N. Y. 604; 118 id. 415; 130 id. 601.)

*H. J. Cookinham* for respondent Bulger. The general assignment of Buckley & Co. to Patrick F. Bulger as assignee for the benefit of creditors is a good and valid assignment. (*Griffin* v. *Marquardt*, 21 N. Y. 121; *Bank of Silver Creek* v. *Talcott*, 22 Barb. 550; *Brainerd* v. *Dunning*, 30 N. Y. 211; *Maack* v. *Maack*, 49 Hun, 507; *Richardson* v. *Thurbur*, 104 N. Y. 606; *Roberts* v. *Vietor*, 54 Hun, 461, 465; *Smith* v. *Smith*, 136 N. Y. 313.) The sum of $12,656.38 was a just and valid debt due Daniel G. Major at the date of the assignment. (*Flack* v. *Vil. of Green Island*, 122 N. Y. 107, 117; *People* v. *French*, 123 id. 636; *Healey* v. *Clark*, 120 id. 642.) The amount actually due Major was preferred by the statement of the preference in the assignment. (Laws of 1887, chap. 466, § 3; *Hendricks* v. *Waldon*, 17 Johns. 438; *Griffin* v. *Marquardt*, 21 N. Y. 121; *Bank of Silver Creek* v. *Talcott*, 22 Barb. 550; *Brainerd* v. *Dunning*, 30 N. Y. 211; *Maack* v. *Maack*, 49 Hun,

507; *Burley* v. *Hartson,* 40 id. 121; 109 N. Y. 656; *Richardson* v. *Thurber,* 104 id. 606.) The additional evidence produced on the last trial to explain the omission of certain qualifying words from the schedules filed subsequently to the assignment was sufficient, relevant and competent. (*Pratt* v. *Stephens,* 94 N. Y. 387; *Brown* v. *Halstead,* 17 Abb. [N. C.] 197; *Kavanagh* v. *Beckwith,* 44 Barb. 192; *Peyser* v. *Myers,* 135 N. Y. 599; *Van Bergen* v. *Lehmain,* 72 Hun, 304; *Shultz* v. *Hoagland,* 85 N. Y. 464, 473; *Crook* v. *Rindskopf,* 105 id. 476, 482; *Fay* v. *Grant,* 53 Hun, 44, 47; 126 N. Y. 624; *Blain* v. *Pool,* 13 N. Y. S. R. 571; 116 N. Y. 651.) The mere omission of certain qualifying words in the schedules filed subsequently to the assignment did not, *per se,* render the latter fraudulent. (*Wilson* v. *Forsyth,* 24 Barb. 105; *Mathews* v. *Poultney,* 33 id. 127; *Shultz* v. *Hoagland,* 85 N. Y. 464; *Talcott* v. *Hess,* 31 Hun, 282; *Chambers* v. *Smith,* 60 id. 248; *Browning* v. *Hart,* 6 Barb. 91; *Cuyler* v. *Cartney,* 40 N. Y. 221; *Peyser* v. *Myers,* 135 id. 599; *Stafford* v. *Merril,* 62 Hun, 144, 147; *Coursey* v. *Morton,* 132 N. Y. 556; *Fay* v. *Grant,* 53 Hun, 44; *Smith* v. *Smith,* 136 N. Y. 313; *Nordlinger* v. *Anderson,* 123 id. 544; *Durant* v. *Pierson,* 124 id. 444; 58 Hun, 190; *Crook* v. *Rindskopf,* 105 N. Y. 476, 485; *Townsend* v. *Stearns,* 32 id. 209, 313; *Franey* v. *Smith,* 125 id. 44.) In the former decision of this case the Court of Appeals did not pass upon the issues as now presented. That decision is not conclusive upon this appeal. (130 N. Y. 596; Code Civ. Pro. § 1317; *Guernsey* v. *Miller,* 80 N. Y. 181.) The amendment of the schedules by order of the county judge was valid and binding upon all the parties to this action. (*In re Cohn,* 78 N. Y. 248; *In re Morgan,* 99 id. 145, 148; *In re Underhill,* 117 id. 471, 478; *Garlock* v. *Vandervort,* 128 id. 374; *Mitchell* v. *Van Buren,* 27 id. 300; *Ingram* v. *Robbins,* 33 id. 409–418; *U. Bank* v. *Bush,* 36 id. 631; *Symson* v. *Silheimer,* 40 Hun, 116; *Cook* v. *Whipple,* 55 N. Y. 150; *Nims* v. *Sabine,* 44 How. Pr. 252; *Taylor* v. *Ranney,* 4 Hill, 619; *Weeks* v. *Tomes,* 16 Hun, 349; *McCormick* v. *Wheeler,* 36 Ill. 114.) The assignment must

be sustained as to the moneys, debts and choses in action in the hands of the assignee at the time of the commencement of the suit. (*Castle* v. *Lewis,* 78 N. Y. 131; *Hess* v. *Hess,* 117 id. 306, 308; *McAllester* v. *Bailey,* 127 id. 583.) None of the appellants' exceptions were well taken. (Code Civ. Pro. § 992; *Daniels* v. *Smith,* 130 N. Y. 696; *Turner* v. *Weston,* 133 id. 650; *Healey* v. *Clark,* 120 id. 642; *West* v. *Van Tuyl,* 119 id. 620; *Patterson* v. *Robinson,* 116 id. 193; *Burger* v. *Burger,* 111 id. 523; *Crim* v. *Starkweather,* 136 id. 635; *Faxon* v. *Mason,* 76 Hun, 408.)

*W. A. Matteson* for judgment creditors, respondents. It is first submitted that the appellants, Vietor & Achiles, have no right or standing in this action to prosecute it against the defendants. (*Reubens* v. *Jewel,* 13 N. Y. 488; *Estes* v. *Wilcox,* 67 id. 264; *Addee* v. *Bigler,* 80 id. 349; *Litchenberg* v. *Cherdlfelder,* 33 Hun, 58; 103 N. Y. 302.) The debt claimed to be due to Daniel G. Major is a valid claim. The referee has found that it is an honest debt. (*Church* v. *Sparrow,* 5 Wend. 223; *Miller* v. *Manice,* 6 Hill, 115; *O. Co. Bank* v. *De Puy,* 17 Wend. 47; *O. Bank* v. *Hennessy,* 48 N. Y. 551.) The Major judgment is valid. (*Weaver* v. *Greenbaum,* 61 N. Y. 311; *Shultz* v. *Hoagland,* 85 id. 467; *W. Co.* v. *Hodenpyl,* 135 id. 430; *Kaare* v. *T. S. & I. Co.,* 139 id. 337; *Bear* v. *Mayor, etc.,* 96 id. 567; *Aldredge* v. *Aldredge,* 120 id. 614; *Devlin* v. *G. S. Bank,* 125 id. 756; *Barnard* v. *Gantz,* 140 id. 253; *Morris* v. *Talcott,* 96 id. 107; *Lorillard* v. *Clyde,* 86 id. 387; *Crook* v. *Rindskopf,* 105 id. 435; *Beardsley* v. *Wheeler,* 11 Hun, 539; *Trier* v. *Herman,* 44 id. 489; *Gutman* v. *McNulty,* 22 Wkly. Dig. 241; *Brown* v. *Halstead,* 17 Abb. [N. C.] 197; *Valentine* v. *McQue,* 26 Hun, 456; *Coffin* v. *Leslie,* 36 id. 348; 110 N. Y. 645; *Sears* v. *Burnham,* 17 id. 446; *Hunt* v. *Grant,* 19 Wend. 90; *U. Bank* v. *Bush,* 36 N. Y. 634; *Mitchell* v. *Van Buren,* 27 id. 300; *Ingram* v. *Robbins,* 33 id. 418; *Happock* v. *Donaldson,* 12 How. Pr. 142; *Mann* v. *Savage,* 7 id. 449; *White* v. *Bokhart,* 73 N. Y. 259; *Gere* v. *Gundlach,* 57 Barb. 15;

*Stark* v. *Stark*, 2 How. Pr. 362.)  The judgment creditors whom we represent are also preferred creditors under the assignment.  They are, therefore, interested in maintaining this action, and urge its validity.  (130 N. Y. 592; *Shultz* v. *Hoagland*, 85 id. 467; *Townsend* v. *Stearns*, 32 id. 214; *Hardman* v. *Boyd*, 39 id. 197; *Peyser* v. *Meyers*, 135 id. 606; *Crook* v. *Rindskopf*, 105 id. 485; *N. Y. & B. F. Co.* v. *Moore*, 102 id. 667; *Morris* v. *Talcott*, 96 id. 107.)

O'BRIEN, J.  The plaintiff, a domestic corporation and judgment creditor of the firm of John Buckley & Co., brought this action to set aside a general assignment made by the firm for the benefit of creditors, to the defendant Bulger, on the 17th of March, 1886.  The complaint charges that it was made to hinder, delay and defraud creditors and is, therefore, fraudulent and void.

At the time the assignment was made, suits were pending against the firm in behalf of various creditors, in which judgments were rendered subsequent to the assignment, and executions levied upon the property in the hands of the assignee.  The complaint stated that the action was brought, not only for the purpose of enforcing the judgment of the plaintiff and the lien obtained or claimed under the execution issued thereon, but also in behalf of all other creditors who were similarly situated and who desired to join in the prosecution of the action.  The other creditors who had obtained judgments and claimed liens, acquired thereunder, were made defendants and, among them, the firm of Vietor & Achelis who had a large debt and claimed a lien by attachment, issued in an action for the recovery of the debt, in which an attachment had been granted and levied upon the property after the assignment.  This firm, by answer, joined with the plaintiffs in assailing the assignment upon the allegations of fraud contained in the complaint, and the action finally assumed the form of a controversy between this firm and the assignee, both defendants, all the other creditors, including the plaintiffs, having practically abandoned the con-

test in regard to the validity of the assignment, though there has been no change in the parties or the form of the action.

On a former trial before a referee and a review at the General.Term, the assignment was held to be free from fraud and entirely valid. The judgment, however, was reversed in the Second Division of this court and a new trial granted. (*Roberts* v. *Vietor*, 130 N. Y. 585.)

This appeal is from an affirmance of the judgment rendered on the second trial, before another referee, in which it was again decided upon a full trial that the assignment was valid and the charges of fraud not sustained.

These charges were originally aimed at claims preferred in the assignment, in favor of various of the creditors, with respect to which it was alleged that they had no existence in fact and were fictitious and fraudulent, and preferred in the assignment with a fraudulent intent and for a fraudulent purpose. In the progress of the litigation, which is of long standing, the charges against these preferred debts have all been abandoned except so far as they relate to the claim of a single creditor. The charge of fraud now rests entirely upon the facts and circumstances connected with the debt of Daniel G. Major, the brother-in-law of Buckley, one of the assignors, and whose claim was preferred in the third class. The complaint alleged that the debt so preferred was fictitious and fraudulent and so invalidating the whole assignment. This was the simple and well-defined issue before the referee on the last trial, and this appeal presents only questions resulting from the trial of that issue.

Whether the debt, which the assignors directed the assignee to pay to this creditor, was honest or merely fictitious and thus fraudulent, was the question and the only question in controversy. From the very nature of the issue the whole controversy turned upon a question of fact which is ordinarily capable of ready and easy solution in any mode of trial. The learned referee has determined this issue in favor of the assignment. He has found that the debt preferred in the assignment to this creditor was honest and free from all fraud, that

it was justly due to the creditor from the assignors, and that
no part of it was fictitious. The consideration of the debt and
all the facts and circumstances connected with its origin,
creation and preference in the assignment, have been found
with great fullness of detail against the contention of the
creditors assailing the assignment. After such an issue has
been twice tried and as often reviewed in an appellate court,
having jurisdiction over questions of fact, it is seldom that
any question is left demanding serious consideration in this
court. But the judgment which was the result of the first
trial was reversed, as we have seen, upon the former appeal,
and the case has again been argued in this court by distinguished
counsel who insist with great earnestness that the same result
should follow this appeal. Moreover, the discussion among
ourselves reveals the fact that some of my brethren are dis-
posed to take that view of the case. These circumstances
and this situation will perhaps justify a more extended dis-
cussion of the questions decided in the court below, and in the
Second Division upon the former appeal, than would otherwise
be thought necessary.

There is no dispute concerning the rules of law that govern
in such a case, with respect to the construction to be given to
the assignment and the inventory and schedules. They must
be interpreted, like all other instruments, according to the
intention of the parties and, if possible, such a construction
should be adopted as will sustain the assignment, rather than
defeat it, in accordance with that quaint rule given by Coke :
" Whensoever the words of a deed may have a double intend-
ment, and one standeth with law and right, and the other is
wrongful and against law, the intendment that standeth with
law shall be taken." (Coke's Litt. 42.) The onus is upon the
party charging fraud to show affirmatively some illegal pro-
vision or some act, consciously and purposely done, which is
inconsistent with an honest purpose. A mistake in the inven-
tory of the property or in the assignment, with respect to the
description of the debt, or its amount or form, in the absence
of actual fraud, will not invalidate the instrument. As was

said by Judge FINCH, in one of the cases cited below : "It would be hard to find any schedule absolutely perfect, or any debtor who could inventory every item of his property with strict accuracy. Room must be allowed for honest mistakes, and possibly even for careless and thoughtless error." When the instrument and the acts of the parties are fairly capable of a construction consistent with innocence and the general rules of law, they should be given that construction in preference to one which would impute a fraudulent intent or defeat the general intent and purpose of the conveyance. (*Townsend* v. *Stearns,* 32 N. Y. 209 ; *Shultz* v. *Hoagland,* 85 id. 467 ; *Bagley* v. *Bowe,* 105 id. 171 ; *Crook* v. *Rindskopf,* Id. 476.) Nor will a direction in the assignment for the payment of a debt at a greater amount than is justly due invalidate the instrument, in the absence of a fraudulent intent. In a recent case the debt was preferred for $20,000 in excess of what was really due, and that excess paid to the creditor. We held that as there was no actual fraud the assignment was not avoided, but the assignee could simply recover back the excess paid. (*Peyser* v. *Myers,* 135 N. Y. 599.)

The assignment in this case was valid or invalid, fraudulent or honest at the moment it was made. When it was delivered the title to the property passed under it, if ever, and if at that time, it represented an honest purpose and was made in good faith, fraud could not be fastened upon it afterwards by any acts or statements of the assignors, whether verbal or written.

These acts and statements, at most, could amount to nothing more than evidence reflecting light with more or less force, according to their nature, upon the intent and purpose with which the assignment was made, and thus bearing upon the issue of fact between the parties. But the character of the instrument itself must be determined upon the facts and the situation existing when it was delivered and recorded. The assignment in question directed the assignee to pay in full certain debts enumerated in schedule C annexed, after having first paid and discharged in full, with interest, the two other

classes of preferred creditors described in the two preceding schedules. On turning to schedule C we there find the debt of Major, upon which the issue of fraud in this case turns, and which it is alleged is fictitious, described in these words:

| NAME OF CREDITOR. | Residence. | Considera-tion. | Form of debt. | Amount. | Date for interest. |
|---|---|---|---|---|---|
| Daniel G. Major. | Washington, D. C. | Money loaned. | Account and notes which assignors are unable to describe. | About 12,000. | $1,000, Jan. 12, 1883. 1,500, Aug. 8, 1883. 500, Oct. 4, 1883. 1,000, Feb. 4, 1884. 3,000, Feb. 10, 1884. 5,000, May 23, 1884. As near as assignors are able to state. |

The assignee was thus directed, if anything remained after paying the debts of the two first classes of preferred creditors, then to pay the debt in question to Major, consisting of certain notes and accounts which the debtors were unable to describe, the aggregate of which was stated at about $12,000, to be increased, however, by adding interest, to be computed from the dates and upon the amounts mentioned in the last column. They did not even profess to state these dates or amounts with accuracy since they added the qualifying words, "as near as assignors are able to state" in the column headed "date for interest." The debt preferred was a gross sum of about $12,000, without professing to give the items, since the dates and amounts in the last column were nothing but mere data for computing interest.

The primary and controlling question in the case is whether the debt thus described, in fact existed, or was honestly due to the creditor, or was merely fictitious and fraudulent. All the other facts in the case are merely collateral to this, the main fact, and are of but little consequence except so far as they furnish matter of evidence bearing upon this central point of the whole controversy. The learned referee found upon abundant evidence that the debt existed and by full and comprehensive findings of fact negatived every allegation of fraud. He found that on the day the assignment was made,

the assignors honestly owed this preferred creditor $12,656.38. The several obligations entering into the debt, as a whole, were produced before the referee and he has made an express finding as to each item.     They consisted of six promissory notes and two checks of the following amounts and dates: Note Feb. 26, 1883, $1,000; June 1, 1883, $1,000; Oct. 4, 1883, $500; January 31, 1884, $1,000; Feb. 12, 1884, $3,000; May 6, 1884, $3,000; May 6, 1884, check, $500; May 17, 1886, cash advanced, $2,538.75.     After computing interest on these amounts from the dates given and crediting payments, the balance is the debt found by the referee.     These findings were made upon evidence that cannot even be said to be at all conflicting and there is not the slightest dispute as to the facts. The learned counsel for the contesting creditors made no suggestion in his oral or written argument against the existence of the debt in fact, as found at the trial, or as to the sufficiency of the words used in the assignment to authorize the payment.     It appeared upon the trial that the $1,500 item in the schedule had been paid and that it was inserted in the schedule by mistake and this fact is found upon evidence entirely satisfactory.     So it also appeared and is found that when the several obligations were produced before the referee they differed in dates and amounts, in some cases slightly, and in others more materially, from the dates and amounts of the several items in the schedule.     The reason for this variance was satisfactorily shown and is found by the referee.     Moreover, the assignors did not profess to describe the items with accuracy as already observed.     Certainly there is nothing in the variance between the items in the assignment and those in the referee's report, if indeed there can be said to be any variance at all, to impeach the assignment.     (*Smith* v. *Smith,* 136 N. Y. 313; *Richardson* v. *Thurber,* 104 id. 606; *Pratt* v. *Stevens,* 94 id. 387.)     It is so entirely obvious that the preferred creditor had the right to prove any honest debt that he had to the extent of about $12,000, irrespective of the amounts and dates in the last column, that the variance, if any, is not of the slightest importance.     To call the debt or

any part of it fictitious because made up of amounts with dates differing from those in the last column is a plain perversion of terms that is quite inconceivable.

The assignment has, thus far, been considered only as it existed when delivered and recorded, and as affected by the facts disclosed at the trial and found by the referee. It is quite clear that, thus considered, it was not invalidated by reason of anything appearing upon its face or any extraneous fact found at the trial. The learned counsel for the contesting creditors, up to this point, has not been able to find anything in the case to sustain his position, or which tends to show that at the time the assignment was made there lurked in it any element of fraud, and, consequently, his assault upon the instrument is based entirely on what occurred afterwards; and this brings us to that feature of the case which, thus far, has played an important part in this controversy.

On the 7th of April, twenty days after the assignment was made, the debtors filed the inventory and schedules required by the statute. (Laws of 1877, chap. 466, § 3.) They were verified by them two days before and contained the following statement with reference to the debt in question:

| NAME. | Residence. | Amount. | Form. | | |
|---|---|---|---|---|---|
| Daniel G. Major. | Washington, D. C. | $12,000 | Accounts and Notes. <br><br> January 12, 1883, $1,000. <br> August 8, 1883, $1,500. <br> October 4, 1883, $500. <br> February 1, 1884, $1,000. <br> February 10,1884, $3,000. <br> May 23, 1884, $5,000. | Judgment. | Money Loaned. |

The dates and amounts of the several items are identical with those in the assignment, but the qualifying words there found were omitted, and hence it is urged that it is an unqualified statement of the debt, which was untrue, for the reason

that it exceeds, by the sum of $845.32, the true amount as found by the referee.

The direction of the debtors to the assignee was to pay the debt described in the schedule attached to the assignment, not, necessarily, to pay that described in another schedule not made until twenty days afterwards. The direction in the assignment was, as we have seen, to pay a debt consisting of a gross sum of about $12,000, the items of which could not be specified, certain amounts and dates being given for the computation of interest. When the assignors came to make the inventory, twenty days afterwards, they did not and could not change this direction. If the last description of the debt differed from the first the assignee was not necessarily controlled by the latter. It might be evidence of a fraudulent intent when connected with other facts entitled to greater or less weight, according to the circumstances, but it could not, of itself, invalidate what was valid before. The assignee was not confined to the inventory for a description of the debt or for the amount directed to be paid. He could look beyond it and to the whole instrument, and, in any event, he could not be compelled to pay any more than should appear to be justly due. The administration of an estate conveyed to a trustee for the benefit of creditors devolves upon the County Court under the statute, and ample provision is there made for the examination and determination of all claims against the estate by that court and by a jury, upon the application of the assignee or any creditor. If the debt was magnified in the inventory beyond its true amount, that would not, necessarily, make it fictitious unless it was fictitious when the assignment was made. Before we can condemn an instrument as fraudulent because it provides for the payment of a fictitious debt it must appear that the assignor has, with a fraudulent purpose in view, knowingly and consciously directed the payment of a claim which, to his knowledge, had no real existence, either in whole or in some substantial part. It is scarcely necessary to say that there is no such finding in the case, but ample findings to the contrary.

This court will sometimes look beyond the findings and into the evidence to sustain a judgment, but not to reverse it. But even if we should consider every fact and circumstance urged by the learned counsel for the contesting creditors, it would be impossible, I think, to give any other construction to the whole instrument than an authority to the assignee to pay what should be found due to the preferred creditor, and upon its face, when properly construed, it contains no direction to pay a fictitious debt.

But it is said that this court in the Second Division took a different view of the effect of the inventory in deciding the former appeal, and that we are bound by that decision. If the facts then and now are identical, it is our duty to follow the former decision, even though convinced, if the case was *res nova,* that our brethren of the Second Division took an erroneous view of the law. It is necessary to adhere to this principle if there is ever to be an end to litigation. It is important, of course, that private controversies should be determined in the court of last resort according to law and justice ; but the infirmities of human judgment are such that different tribunals will not always take the same view of the question. When, however, the question has been once decided in this court, or in the Second Division, with co-ordinate powers, the same parties, in the same case, upon the same facts, cannot be permitted to re-open the discussion without great detriment to the public interest and destroying that respect for the decisions of courts which it is important should be maintained. (*Cluff* v. *Day,* 141 N. Y. 580 ; *Mygatt* v. *Coe,* 142 id. 78 ; *Moore* v. *Simmons,* 133 id. 695.)

But the view that I take of this case does not trench upon this principle in the slightest degree. This is not now the case that was before the Second Division, but a new case, with new findings and new facts. No court has ever yet held, and certainly the learned court that decided the former appeal did not hold, that the statement of a debt in an assignment or an inventory at an excessive sum was conclusive evidence of fraud, that rendered the assignment void as matter of law. On the con-

trary, it is as well settled, as any principle can be, that such an act does not invalidate the assignment in the absence of actual fraud. If it is the result of mistake or inadvertence, that may be shown. Nothing contrary to this principle was decided on the former appeal, when properly understood, and, in order to get a clear view of the question, we must know just what was then decided and how the case now stands.

The former judgment was not reversed for the reason that the $1,500 item was found to have been paid, nor because the $5,000 item did not exist in the precise form stated but in other forms, nor for the reason that there was a mistake of a day or two in the date of a thousand-dollar note, but simply and solely for the reason that the debt was stated at an excessive sum without qualification or explanation. This is entirely clear from the opinion, though it may not be so clear from the head note. Judge Haight, who spoke for the majority, after stating the facts, then states the legal question involved in these words:

"It is contended, however, that it was the indebtedness of Major that was preferred and not the items making up such indebtedness, and that a mistake in giving the items should not avoid the assignment, provided that other items of indebtedness in fact existed. This view would deprive the other creditors of the advantage given them by the statute of knowing 'the true cause and consideration' of the claim, but without assenting to the correctness of the proposition we may, for the purposes of this argument, assume it to be sound. The fact still remains that the amount actually owing Major falls short of the amount preferred in the sum of $845.32."

The significance of this language is obvious. The learned judge begins by assuming without deciding, that a certain proposition, which he states, is sound, and then in effect he says, conceding all that, the fact still remains that the debt stated exceeds that found by $845.32, and the opinion then proceeds to deal with the legal effect of that fact, and deals with nothing else. The general result of the whole discussion is stated in the following paragraph of the opinion:

" The referee has said that the assignment was made in good faith, and without intent to hinder, delay or defraud the creditors, but the provisions of the assignment carried out deprives the general creditors of this sum, and the rule is that every party must be deemed to have intended the natural and inevitable consequences of his acts, and where his acts are voluntary, and necessarily operate to defraud others, he must be deemed to have intended the fraud."

The court applied to the case the familiar principle that a person is presumed to intend the natural and necessary consequences of his act. That, however, is never anything but a presumption, and it was never held that the presumption arising from a particular act, unexplained and unqualified, whether the presumption was of a crime or a fraud, could not be removed by evidence that the act was the result of mistake or inadvertence, and that the intention was innocent. Of course the learned court never intended to hold, and did not hold, that an act which, unexplained, created an inference of fraud, could not be explained so as to render it consistent with innocence. The court dealt with two questions, one a question of fact, and the other a question of law. It was assumed that the statement of the debt in the inventory, entirely detached from the qualifying words in the assignment, and standing alone, magnified the claim beyond its real amount, and from that fact, standing in the record unexplained and unqualified, there followed the inference of fraud as matter of law, which vitiated the assignment. There was then no evidence and no finding of fact in the case to rebut the presumption. The only finding then in the case was the general one that the assignment was made in good faith and without any fraudulent intent, but that did not cover the point, since the vice which the court found was not in the assignment but in the inventory, filed twenty days afterwards. There was no evidence and no finding whatever as to the circumstances under which that paper was executed, or as to the intent and purpose with which it was made. There was nothing to change the presumption which it created, or to break its force

and effect as *prima facie* evidence. The court assumed that such a result would be possible, and, therefore, granted a new trial. If it was not possible, or if the statement was deemed conclusive, of course that ended the case and final judgment should have been given.

It is very clear, I think, that the case as now presented is entirely changed. New evidence was given at the last trial in regard to all the facts and circumstances attending the execution and filing of the inventory and the intent and purpose of the parties, and the referee has made comprehensive findings which cover every point. These findings were made upon evidence not only uncontradicted, but, in itself, very reasonable and probable.

It appeared that when the assignment was made the creditor, who resided in Washington, was absent upon the western plains in the service of the government as an engineer. A firm of attorneys at Utica acted for him, and, not knowing all the facts and details of the debt, described it as best they could. Another firm was employed by the assignor to draw the assignment, and they obtained the data relating to the debt in question from the attorneys acting for the creditor. The assignment, when drawn and completed by one member of the firm, was handed by him to his partner, who took it to the assignors for examination. It was then found that the assignors could not describe the debt with perfect accuracy, as some of the books upon which it appeared were not in their possession, and some portion of the money had been paid by the creditor to third parties for the benefit of the assignors. This situation caused the insertion then and there for the first time of the qualifying words found in schedule C, and in this form the assignment was executed and recorded, but the partner, who drew the assignment, was not informed of the change made after it left his hands. Twenty days afterwards this same partner drew the inventory from the same data and memoranda which he used in drawing the assignment, and, being ignorant of the change made in his work by the insertion of the qualifying words, he described the debt in the

inventory as he had described it in the assignment, intending in both papers to describe the same debt in the same way.

These facts are all found by the referee, who then finds that the inventory was made and verified by the debtors under the belief that it had been properly prepared by the attorneys who had charge of the matter, but who had inadvertently given an incorrect description of the debt; that they acted in good faith, without any intent to hinder, delay or defraud creditors, honestly intending to set forth their indebtedness without stating the precise items of the same, which they were unable to state, and without intending to modify or change the statement contained in the assignment.

The objections of the learned counsel for the contesting creditors cannot prevail in the face of these findings.

The complaint also asks relief against the judgment which this preferred creditor recovered upon an offer of judgment on the same day that the assignment was recorded. It is alleged that the judgment is fraudulent because the debt was fictitious, and the relief demanded is that it be vacated and set aside as void. If the views expressed with respect to the assignment should prevail, this phase of the case is of no importance, since the property would vest in the assignee discharged from the lien of any of the subsequent judgments. In any event this feature of the case presents no question of law.

The issue in regard to the judgment was one of fact. The evidence was the same as upon the same issue in regard to the assignment, except that the inventory plays no part in the inquiry. The judgment, when recorded, was for a sum in excess of the real debt of over $800. The referee found that it was to that extent excessive, but not fraudulent. That it was rendered in good faith for the purpose of securing an honest debt. This finding alone is a complete answer to the objections now made. The judgment was subsequently modified and reduced to the true sum on an application to the court. The court certainly had power to correct its own judgments, and even if it had never been corrected it was good for the sum actually due in the absence of a fraudulent pur-

pose which is completely negatived by the findings of the referee. The order correcting the judgment was entered *nunc pro tunc* as of the date of the judgment. No one appealed from it, and it now stands as the result of the exercise of power resting largely in discretion.

Since the judgment was good without the order for what was honestly due, it can work no injury to any of the parties to this action. Besides the original judgment was given in evidence by the contesting creditors, and it was then proper to show by the order correcting it that the excess had been eliminated from the record.

After the decision of the former appeal, upon the application of the assignors, with notice to the assignee, the county judge made an order amending the schedules and inventory *nunc pro tunc* so as to conform substantially to the statement of the debt in the assignment. This order was given in evidence under the objection and exception of counsel for the contesting creditors. The county judge had the power under the statute to make the order. The statute confers it in plain words, thus providing for correcting mistakes or defects in the inventory, which ought not to be permitted if the statement of the debt when once made could be held conclusive. The form in which it was drawn and the time when it might take effect were matters of discretion to be corrected, if erroneous, by appeal, since the order was not void but at most erroneous. The order when made was just as much a part of the assignment as the inventory which it modified, and as it was the basis for the distribution by the assignee of the assigned estate it was for all general purposes evidence of the claims directed to be paid. The only question is how far it could affect an action pending when it was made. The referee expressly held and found that it could not operate as against the contesting creditors to impair or prejudice any right or lien which they had acquired against the assigned property prior to the time of the entry of such order. This ruling protected the contesting creditors against any possible injury and leaves them without any legal or just ground for complaint.

These amendatory orders had little if any bearing upon the question whether an honest or fictitious debt had been preferred, and as against the contesting creditors were given none. At most they were simply harmless documents on the record. The case in every aspect and upon every point was correctly disposed of in the courts below, and the judgment should be affirmed, with costs to the assignee against Vietor & Achelis, the attachment creditors.

ANDREWS, Ch. J., FINCH and PECKHAM, JJ., concur; GRAY, BARTLETT and HAIGHT, JJ., dissent; GRAY, J., on ground that the court is concluded by the decision in 130 N. Y. 585, in this case, because by the construction there given to the act the inventory is a part of the transaction of assignment and is to be read into the assignment.

Judgment accordingly.