(18 Misc. Rep. 107.)

### HUBER v. WIMAN et al.

(Supreme Court, Special Term, New York County.    September, 1896.)

FRAUDULENT CONVEYANCES—PROOF OF FRAUDULENT INTENT.
    Evidence as consistent with innocence as with wrongdoing is insufficient to prove that an assignment was made with fraudulent intent.

Action by Edward C. Huber against Erastus Wiman and others to set aside an assignment for the benefit of creditors. Complaint dismissed.

Thompson & Allen, for plaintiff.
George A. Black, for the assignee.

SMYTH, J. The evidence, while it has a tendency to establish a course of conduct, on the part of the assignor, creating a suspicion, if not a presumption, adverse to an honest intent on his part in the disposition of his property, falls short of that degree of proof which would justify me in arriving at the conclusion that the assignment in question was made with the fraudulent intent to hinder, delay, or defraud his creditors. It is a well-established principle of law that fraud will not be presumed, but must be proved, and if there is a doubt about it, the presumption of innocence should prevail (Shultz v. Hoagland, 85 N. Y. 464); and it is also equally well settled that an assignment, such as the one in question, must be interpreted, like other instruments, according to the intent of the parties, and, if possible, such a construction given to it as will sustain rather than defeat it, rendering it incumbent upon the party charging fraud to show affirmatively some illegal provision, or some act consciously or purposely done, which is inconsistent with any honest purpose, and when the assignment made represents an honest purpose, and was done in good

faith, fraud cannot be fastened upon it by reason of any act, statement, or intention of the assignor (Roberts v. Buckley, 145 N. Y. 215, 39 N. E. 966).

The validity of the assignment in question is assailed (1) because the assignor omitted from the proper schedule an interest which it is claimed he had in the firm of R. G. Dun & Co.; (2) by inserting in his schedules a claim in favor of R. G. Dun & Co., which, it is asserted, was largely, if not wholly, fictitious; (3) by omitting from the schedules a plot of land, consisting of about five acres, the title to which stood in the name of one Morrow, but the consideration for which was paid by the assignor; (4) the omission from the schedules of certain outstanding accounts due the assignor; and (5) the delivery of certain bonds belonging to the assignor, representing about $63,700, to the receiver of the electric power company in fraud of the rights of his general creditors.

The evidence bearing upon the first objection is to the effect that the assignor claimed to be a partner in the firm of R. G. Dun & Co., and that this claim was disputed by Dun, and that, at the time of executing the assignment, the assignor, not having been furnished with a statement of the proportionate amount of the profits to which he was entitled, and having drawn largely upon said funds, it was an open question as to whether or not he had any claim whatever against said firm. An examination of the agreement between Dun and the assignor, and under which he claims to be a co-partner, conclusively establishes the fact that no co-partnership ever existed between Dun and the assignor; and the evidence clearly proves that the assignor had no claim against said firm, either as a co-partner or individually, but, on the contrary, that he was indebted to Dun, at the time of the execution of the assignment, in an amount exceeding $325,000, over and above all offsets. Upon the facts it is apparent that there is no force in the first ground urged against the validity of the assignment, and so, also, as to the second ground of objection thereto. The proof bearing upon this objection establishes the fact that the amount inserted in the schedule as the amount of Dun & Co.'s claim against the assignor was estimated after consultation with the assignee, and after the assignee had ascertained and communicated to the assignor the amount due by him to Dun & Co. The evidence clearly shows that there was no fraudulent intent on the part of the assignor, or any intent on his part to insert a fictitious claim in favor of Dun & Co.

The evidence bearing upon the omission to include a five-acre lot of land in the schedule clearly establishes the fact that the assignor believed that it was embraced in the conveyance made by the wife of the assignor, and its omission from the schedules was clearly not fraudulent, or done with a design to hinder, delay, or defraud creditors, and does not vitiate the assignment, and whatever interest the assignor had in said land passed to his assignee under the general assignment.

The evidence bearing upon the fourth ground of objection satisfactorily establishes the fact to be that the outstanding debts due

the assignor consisted, generally, of loans made to persons of no pecuniary responsibility, and were more in the nature of gifts, which the assignor entertained no reasonable hope would ever be returned; that they were not collectible, and were deemed worthless, and for those reasons were not inserted in the schedule of his assets; and there is nothing in the evidence upon which any fraudulent intent could be predicated by reason of the omission of the assignor to insert those claims in his schedule of assets; and this being so, it is well settled that the omission to insert said claims will not vitiate the assignment. Roberts v. Buckley, supra; White v. Benjamin, 3 Misc. Rep. 491, 23 N. Y. Supp. 981; Shultz v. Hoagland, 85 N. Y. 464.

A very careful consideration of the evidence bearing upon the fifth objection to the assignment leads me to the conclusion that the turning over by the assignor to the receiver of the electric power company of the bonds of the Richmond Light, Heat & Power Company for cancellation was not the result of any fraudulent intent of the assignor, or of any design to hinder his creditors from reaching said bonds or their proceeds. In November, 1892, Wiman entered into a written agreement with the electric power company by which he transferred to said company certain property and franchises, which were then owned by and formerly belonged to the Richmond Light, Heat & Power Company, as a payment in full upon the amount due upon his subscription for 980 shares of the capital stock of the electric power company, subject, only, to a mortgage existing thereon to the Holland Trust Company, as trustee for the holders of bonds of the Richmond Light, Heat & Power Company, aggregating $150,000. By this instrument the vendee agreed to accept a surrender to it by Wiman, for cancellation, of the whole or any part of the bonds secured by said mortgage, in full payment of an equal amount due on his subscription for $150,000 of its stock; the intention of the parties being that Wiman should receive $248,000 of the full-paid capital stock of the vendee in consideration of the transfer to it of the property, described in a schedule forming part of said instrument, free from all incumbrances. The instrument of transfer contains other provisions not deemed necessary to refer to. This agreement received a judicial construction by this court in Beebe v. Power Co., 3 App. Div. 335, 38 N. Y. Supp. 395, in which case it was held that, under the agreement, it was obligatory on Wiman's part to deliver all the bonds he could for cancellation. The decision of the court in this case was rendered in April term, 1896. The assignment in question was executed on the 17th of May, 1896. A receiver of the property of the Richmond Light, Heat & Power Company was appointed, upon the application of Wiman, a few days before the execution by him of the assignment; and it appears that the proceedings for the appointment of the receiver, and the preparations for making the assignment, were being prosecuted at the same time; and it is also in proof that Wiman, believing that it was his duty to do so under the agreement and the decision in the Beebe Case, and acting under advice of counsel, surrendered the bonds to the receiver

of the Richmond Light, Heat & Power Company for cancellation; and he gives as his reason for so doing that he was anxious to simplify the matter by having the receivership take the electrical department, and separate it from the general assignment for the benefit of his creditors, and he swears positively, and I am inclined to the conclusion, that he had no intention whatever to hinder, delay, or defraud his creditors. His intention seems to have been a desire to prevent a sacrifice of the electric property, believing that, if he had an opportunity given him to carry out his plans for the reorganization of the company, he would be able, by his exertions in its behalf, to render the stock of the company, which was then of little or no value, a valuable asset in the hands of his assignee, to whom he had turned it over, and eventually be able to pay all his creditors dollar for dollar.

It is not necessary to decide whether the transfer of these bonds by Wiman to the receiver, instead of to his assignee, was rendered obligatory by the decision in the Beebe Case, or that he was properly advised to do so by counsel. It is enough that he did so in good faith, and from honest motives, and relying upon the advice of those in whose judgment he had a right to confide, and without any fraudulent intent. The evidence does not necessarily lead to any presumption of fraud or fraudulent intent on the part of Wiman, but is at least equally consistent with innocence as with wrongdoing; and, that being so, I am bound to give to it that construction which will exonerate him from a dishonest intent. Constant v. University, 133 N. Y. 640, 31 N. E. 26; Shultz v. Hoagland, 85 N. Y. 464; Roberts v. Buckley, 145 N. Y. 215, 39 N. E. 966. There must be judgment in favor of the defendant, dismissing the complaint on the merits, with costs.

Judgment for defendant, with costs.