## In re FITCHARD.

(District Court, N. D. New York. September 20, 1900.)

1. BANKRUPTCY—DISCHARGE—GROUNDS OF REFUSAL.

The burden rests upon a creditor to establish by convincing proof that a bankrupt, since his adjudication, has concealed property belonging to his estate from his trustee, and that the concealment was knowingly and fraudulently made, to defeat his right to a discharge on that ground.

2. SAME—FRAUDULENT CONCEALMENT OF PROPERTY.

The fact that a bankrupt, after his failure in business, many years before Bankr. Act 1898 was enacted, conducted business in the name of his wife, with capital borrowed by her, for the purpose of preventing his creditors from reaching the product of his industry and skill, does not render property which is thereby accumulated in the name of the wife, and to which he never had any title, legal or equitable, assets of his estate on his subsequent adjudication as a bankrupt, so that his failure to schedule such property or report the same to his trustee constitutes a

knowing and fraudulent concealment of property, or the making of a false oath to his schedule, which will defeat his right to a discharge.

**3.** SAME.

Property transferred by an insolvent to his wife years prior to the passage of Bankr. Act 1898, which was purchased by him principally on credit, and subsequently paid for from the proceeds of business conducted by him as agent for his wife, is not assets of his estate which he is required to schedule on his subsequent adjudication as a bankrupt, in the absence of proof that it was held for him on a secret trust; and his failure to so schedule it is no bar to his discharge under such act.

In Bankruptcy. On motion to confirm report of referee recommending the discharge of the bankrupt, and on exceptions to said report.

A copy of the objections interposed by the creditor has not been handed to the court, and neither original nor copy is found among the papers in the possession of the clerk. It may, however, be gathered from the briefs that the discharge is opposed upon two grounds: First, that the bankrupt has knowingly and fraudulently concealed certain property belonging to his estate; and, second, that in omitting to mention said property in his schedules and in verifying the same he knowingly and fraudulently took a false oath. But one creditor appears in the schedules. The discharge is opposed by this creditor who recovered a judgment against the bankrupt March 12, 1890, for $637.52, upon a debt created prior to 1880. The facts upon which opposition to the discharge is founded, except as to some formal matters, all come from the bankrupt. He is the sole witness as to the principal transactions. These occurred between 1879 and 1886. It is impossible to formulate a perfectly correct statement as the testimony fails to give the facts with accuracy. There is uncertainty and confusion as to dates and amounts. The testimony has been read in full, and the following are, it is thought, its salient features: In 1879 the bankrupt commenced a grocery business at Clinton, N. Y. He also engaged in buying and selling hops. The business continued until about 1884, when he failed. When the grocery business was sold out he was indebted about $1,700 for goods purchased in that business. He also owed the demand of the present objecting creditor, which at that time amounted to about $500. He owed other debts amounting to about $2,400, occasioned by a drop in the price of hops. He sold his interest in the grocery business for about $1,000, and was then insolvent in the sum of about $3,600. On the 27th of March, 1886, he purchased property in Clinton known as "The Seeley Place," the consideration being $2,000; he paid $500 in cash and gave a bond and mortgage for the balance. On the 24th of July, 1886, this property, through a third person, was conveyed by the bankrupt to his wife, he having married in August, 1882. A portion of the Seeley property was subsequently sold for $700. On the remaining portion two houses were erected, in one of which the bankrupt and his family lived. Soon after his failure the bankrupt commenced paying his creditors, and that all have since been paid, with the single exception stated, may fairly be inferred from the testimony. After the grocery business was sold out the bankrupt commenced buying and selling hops as agent for his wife, and since then has been acting in that capacity. This business started with $500 which his wife borrowed from her aunt. In one of the first transactions thereafter the bankrupt purchased a quantity of hops at 3 cents per pound and sold them at 17 cents per pound, realizing a profit of some $3,200. From 1882 down to the date of filing the petition the business was all transacted in the name of the bankrupt's wife. Up to 1892 the business was profitable, but since then it has been losing at the rate of from $200 to $500 yearly. The bankrupt has had his living expenses and spending money out of the business, the house being kept and the family supported out of the money thus produced. From time to time real property has been purchased from the avails of the business which is worth about $5,000 over the mortgages thereon.

Andrew W. Mills, for bankrupt.

D. C. Stoddard, for objecting creditor.

COXE, District Judge (after stating the facts). In order to succeed, the opposing creditor must prove that the bankrupt, since the adjudication, has concealed property belonging to his estate from his trustee, and that the concealment was knowingly and fraudulently made. The burden is upon the creditor to establish these propositions by convincing proof. In re McGurn (D. C.) 2 Nat. Bankr. N. 877, 102 Fed. 743; In re Marsh, 2 Nat. Bankr. N. 649; In re Berner, Id. 268; In re May, Id. 93; In re Cornell (D. C.) 97 Fed. 31; Roberts & Co. v. Buckley, 145 N. Y. 215, 39 N. E. 966. It is unnecessary to consider separately the specification relating to the bankrupt's false oath. In the circumstances disclosed by the proof if there be no concealment there can be no false oath. Briefly stated, the case presented is that of a man who, having failed with judgments against him, transacts business thereafter in the name of his wife for the purpose of preventing his creditors from reaching the avails of his labor. There is nothing unusual in this situation. Thousands of insolvents, since the repeal of the bankruptcy act of 1867, have resorted to similar devices. One of the main objects of the present law is to emancipate this vast army of unfortunates by permitting them to emerge from a questionable and undignified seclusion and face the vicissitudes of the business world openly and honestly. The court has no difficulty in finding that the business of the bankrupt was conducted in the name of his wife for the purpose of preventing his creditors from reaching the products of his industry and skill. The title to the real estate was placed in her name for a like reason; but there is nothing in the present act which makes such conduct a ground for withholding a discharge. To prevent the discharge, property belonging to the bankrupt must be fraudulently concealed from his trustee. The record does not show a case of this kind. When the bankrupt failed in 1884 his entire estate, apparently, was swept away. He was insolvent in the sum of nearly $4,000. Since then, unless the testimony is to be rejected arbitrarily and suspicion and conjecture substituted, the bankrupt has transacted business for his wife, the capital being money which she borrowed and placed in his hands. He gave up everything when he failed; there is not a dollar's worth of property which he then owned now in existence; there is nothing that the trustee can put his hand on and assert that it was once the property of the bankrupt. The property which is the subject of controversy was never owned by the bankrupt. With the exception of a few months when the title to the Seeley property stood in his name, he never held the equitable or legal title to any of it. What property did he conceal? Where is it situated? In what language can the court describe it? If he owns no property it is manifest that he can conceal no property. The general facts resemble those disclosed in the case of In re McGurn, supra, and in the Case of Freund (D. C.) 98 Fed. 81, where the business was transacted by the bankrupt as the agent of his wife. A married woman may carry on business with her husband as agent, and the fact that he receives no compensation other than his support does not impair her title to the property or subject it to the claims of his creditors. Such an arrangement, considered ethically, may be a fair subject of discussion, but that it can be

upheld from a legal point of view, is beyond doubt. In Abbey v. Deyo, 44 N. Y. 343, Judge Hunt, who delivered the opinion of the court of appeals, says, at page 346:

"The appellant's counsel insists that the services, the time and talents of the husband are valuable, and he has no more right to give them to his wife, as against his creditors, than to give to her his property to their prejudice. The one, he says, is as much their property as the other. This argument is entirely unsound. The property of a debtor, by the laws of all commercial countries, belongs to his creditors. He must be just before he is generous. He must pay before he gives. Not so with his talents and his industry. Whether he has much, or little, or nothing, his first duty is the support of his family. The instinctive impulse of every just man holds this to be the first purpose of his industry. The application of the debtor's property is rigidly directed to the payment of his debts. He cannot transport it to another country, transfer it to his friend, or conceal it from his creditor. Any or all of these things he may do with his industry. He is at liberty to transfer his person to a foreign land. He may bury his talent in the earth, or he may give it to his wife or friend. No law, ancient or modern, of which I am aware, has ever held to the contrary. No country, unless both barbarous and heathen, has ever authorized the sale of the person of a debtor for the satisfaction of his debts."

See, also, Buckley v. Wells, 33 N. Y. 518; Knapp v. Smith, 27 N. Y. 278.

Even were it proved that the property in dispute was once owned by the bankrupt and that years prior to the passage of the act he transferred it to his wife, such a conveyance, in the absence of proof that the property is held for the bankrupt by a secret trust, cannot bar a discharge under any of the provisions of the present act. Where property owned by the bankrupt is actually in existence and is in fact concealed from the trustee, "or where the title is concealed by a colorable conveyance, the discharge should be refused." Where neither of these conditions exists, it should be granted. In re Murdock, 1 Low. 362, 17 Fed. Cas. 1010 (No. 9,939); In re Boynton (D. C.) 10 Fed. 277.

Counsel for the creditor relies upon the Quackenbush Case (D. C.) 102 Fed. 282; but the case at bar lacks the essential element which there induced the court to refuse the discharge. In the Quackenbush Case the referee found that the bankrupt had in his possession and under his control property, in specie, which had been transferred by him to his wife without consideration, by a mere legal fiction, to prevent his creditors from reaching it. But for this fraudulent title the trustee could lay his hand upon and divide among the creditors the identical property once owned by the bankrupt. In other words, it was the property of the bankrupt which he had attempted to hide by a veil so transparent that the failure was visible to the most unobserving. All these ingredients are lacking in the case at bar. There is no property which can be said to belong to the bankrupt, there is no concealment and no fraud.

The report of the referee is confirmed, the exceptions are overruled and the discharge is granted.