## In re ADAMS.

(District Court, N. D. New York. September 20, 1900.)

1. BANKRUPTCY—DISCHARGE—OBJECTIONS.

Only such grounds as are specified by the objecting creditors will be considered in opposition to the discharge of a bankrupt.

2. SAME—SUFFICIENCY OF OBJECTION.

An allegation that a bankrupt, "with a fraudulent intent, has failed to include in his schedules property belonging to him," describing it, is insufficient as a specification that he "knowingly and fraudulently" concealed the property from his trustee, within Bankr. Act 1898, § 29b, subd. 1, which will constitute ground for refusing a discharge.

3. SAME—CONCEALMENT OF PROPERTY—INSURANCE POLICIES.

A bankrupt, who was a man of advanced years, had life insurance policies maturing in five years, and, in case of his death, payable to his daughters. Their surrender value was about $500, and they were pledged as security for a note of $500. *Held*, that the failure of the bankrupt to include such policies in his schedules was insufficient to establish a charge of fraudulent concealment which would prevent his discharge.

4. SAME.

After a bankrupt became insolvent, and had made an assignment, some years before the passage of Bankr. Act 1898, he established and conducted a small business in the name of his daughters, who furnished the capital. It did not appear that any of the parties interested in the business accumulated anything therefrom. *Held*, that the failure of the bankrupt to schedule his interest in such business did not constitute a fraudulent concealment of property which prevented his discharge.

In Bankruptcy. On motion to confirm the report of the referee recommending a discharge.

Badger & Cantwell, for bankrupt.
John P. Kellas, for objecting creditor.

COXE, District Judge. The discharge is opposed upon two grounds: First, failure of the bankrupt to keep proper books; second, fraudulent concealment by him of property consisting: first, of his interest in the Adams Lumber Company; second, of his interest in certain policies of insurance upon his life; and, third, of his interest

as a residuary owner in funds amounting to $5,000 transferred by general assignment to one Charles T. Eldred. There is no specification charging the bankrupt with having made a false oath; that question cannot, therefore, be considered in this proceeding. In re Pierce (D. C.) 103 Fed. 64.

The objection that the bankrupt failed to keep books is unsupported by the proof and is not seriously pressed.

The specification alleging concealment of property is insufficient. The allegation is that the bankrupt "with a fraudulent intent has failed to include in his schedules property belonging to him," describing it. The essential allegation, that he "knowingly and fraudulently" concealed this property from his trustee, is omitted. The counsel for the bankrupt has, however, waived all formal objections to the specification and the question may be considered as if the allegation properly stated a case of fraudulent concealment under section 29 of the act.

The principles of law involved in this controversy are almost identical with those considered in Re Fitchard (D. C.) 103 Fed. 742, the decision in which case will be filed simultaneously with this decision. It is unnecessary to repeat what was there said.

Regarding the policies of insurance it appears that, prior to the passage of the bankruptcy act, the bankrupt and his two daughters made a joint and several note for $550, which was discounted at the Farmers' National Bank of Malone, N. Y. This note was the successor of two notes made by the bankrupt and indorsed by his daughter Etta during the time that the lumber business was transacted in her name. The money thus obtained was used in that business. The note was secured by two policies of insurance on the life of the bankrupt, the surrender value of which is about $500. Both policies are payable in 1905 to the bankrupt and, in case of his death, to his daughters. Both policies were assigned to the Farmers' National Bank, May 13, 1897. The bankrupt is a man of advanced years. His daughters have a valuable interest in the policies. They are hypothecated as security for $550, an amount greater than their surrender value. It is by no means clear, therefore, that the bankrupt has any appreciable interest therein. In re Buelow (D. C.) 3 Am. Bankr. R. 389, 98 Fed. 86; In re Steele (D. C.) 3 Am. Bankr. R. 549, 98 Fed. 78; In re Diack (D. C.) 100 Fed. 770. But conceding that the bankrupt has an interest, it is so vague, indefinite and uncertain that a charge of fraudulent concealment cannot be predicated of the omission of the policies from his schedules. The omission is not incompatible with honesty of purpose; he may, in entire good faith, have entertained the idea that he had no assignable interest.

The other allegations of fraud are based upon and grow out of the general assignment made by the bankrupt in December, 1891, to Charles T. Eldred. This was eight years before the petition was filed. The assignment has never been attacked in any legal proceeding. It must, therefore, be treated as an unimpeached and perfectly legal document which operated to transfer to the assignee all the property then owned by the bankrupt. There is nothing to show that the bankrupt, since the assignment, has had any part of the assigned

property in his possession or under his control except as the servant of others. The proposition that the assignment was a fictitious and fraudulent transfer of title, designed to conceal the property and enable the bankrupt to retain its possession and secretly enjoy its emoluments, is based upon the merest conjecture. On the contrary it appears that the property passed to the assignee and has been administered by him under the assignment. Whether his conduct has been wise or unwise, prudent or imprudent, are questions which are not pertinent to the present issue. He can be called to answer for his stewardship in the courts of the state. The fact that he has not been asked to account furnishes a strong presumption that the creditors have no valid ground of complaint. His wrongdoing, assuming it to exist, cannot be imputed to the bankrupt unless he is privy to it, or is to receive profit or advantage therefrom. There is no proof that the bankrupt and the assignee have entered into a conspiracy to plunder the creditors for the benefit of the bankrupt. Starting with the proposition, which cannot be controverted, that the assignment was and is a valid instrument vesting the title in Eldred to all the property, there is little difficulty in discovering the fallacy of the arguments in opposition to the discharge. They all rest upon the unsupported assumption that the assignment was a fraudulent device intended to create a secret resulting trust in favor of the bankrupt. Since the assignment the bankrupt has been endeavoring to support himself and family and has transacted business as agent for his daughters, a makeshift not infrequently resorted to by insolvent debtors who seek to exempt their future earnings from the grasp of creditors. His action in this regard may be the subject of criticism, but that it was not illegal has been asserted by the highest judicial authority. Abbey v. Deyo, 44 N. Y. 343, and cases cited. Surely it did not amount to a fraudulent concealment of his property. The assignee leased to one of the bankrupt's daughters a hop yard, which was part of the assigned property, and she realized about $800 from its cultivation. This was in 1892. About the same time a small lumber business was organized under the name of the Adams Lumber Company. The bankrupt's daughters were the partners in this enterprise. They furnished the capital but took no active part in the business, which was managed by the bankrupt who contributed his experience, labor and skill. The business was at no time remunerative and there is nothing to show that any one connected with it was able to save any of the profits received therefrom. Certainly there is no proof that the bankrupt has property, derived from the hop yard or the lumber company, which he has hidden from his trustee.

Without pursuing the subject further it may be confidently asserted that, with the possible exception of the insurance policies, there was not a dollar's worth of the property formerly owned by the bankrupt, which at the date of filing the petition in bankruptcy, was owned by him or which was in his possession or under his control. There was no property the title to which vested in the trustee by virtue of the bankruptcy act. There was none which, upon the evidence here, can be recovered by the trustee. In 1891 the bankrupt assigned all his property to Eldred. He has acquired nothing since. How then

can he be convicted of fraudulent concealment? One cannot be guilty of concealment who has nothing to conceal. The bankrupt is entitled to a discharge.