65    43
60h   17

### YATES & DISSEL *vs.* OLMSTED, administrator &c.

A chattel mortgage was given, upon a stock of goods in a store, worth $8,000, to secure a debt evidenced by the mortgagor's promissory notes, for $1,400. It contained a provision that it should be a continuing lien and security upon stock or goods to be thereafter brought into the store, said property then being and remaining in the possession of the mortgagor; provided, always, that the mortgagor should pay to the mortgagee $1,400, the amount of said notes, with interest, as provided therein; with the right to enter into said store and take possession of the property on the non-payment of said notes, or in case the mortgagees should at any time deem themselves unsafe, and sell the same, for said debt. *Held* that such mortgage was clearly fraudulent, as against creditors, upon its face and the undisputed facts of the case. MULLIN, P. J., dissented.

*Held, also,* that a fair interpretation of the mortgage itself implied or involved an agreement and understanding between the parties that the mortgagor should go on with the store, selling the goods on his own account, and replenishing the stock from time to time, precisely as he had previously done, and without respect to the mortgage, till the notes, or one of them, which the mortgage was given to secure, should fall due.

*Held, further,* that the provision that the mortgage should be a continuing lien and security upon " the stock or goods to be thereafter brought into the store" imported that the new goods were expected to be brought into the store, to replace those sold, so that the lien should be continued, and transferred from those sold to the new goods thereafter to be brought into the said store; and the lien was thus a lien fluctuating from old goods as sold, to new goods substituted in their place. That this was the clear purpose and intent of the parties, as fairly inferable from the terms of the mortgage itself.

Under such circumstances, although no express agreement, in words, between the parties, that the mortgagor shall continue to sell the goods mortgaged, and the business proceed as before the giving of the mortgage, is found by the referee, such an agreement or understanding may be implied.

THIS is an appeal from a judgment on the report of a referee. .

The action was replevin, for a stock of goods, and goods to the value of $2,000 were taken by the officer, when the defendant gave security for the property, and retained it in his possession.

The defendant was the administrator of one Morrison, and the plaintiffs claimed the goods under a chattel mortgage executed by said Morrison, dated December 13, 1871, given to secure two notes of $700 each, dated December

13, 1871; one payable in four months, and the other in six months, from date. Morrison, at the time of giving of said notes and mortgage, was a merchant and trader at Le Roy, and the description of the property contained in said mortgage is as follows: "All my stock of goods in my store No. 37 south side of Main street, Le Roy, New York, consisting of ready made clothing, boots and shoes, hats and caps, trunks, gloves and mittens." And the said mortgage contained the following provisions: "This mortgage is to be a continuing lien and security upon stock or goods to be hereafter brought into the store, said property now being and remaining in the possession of Douglas Morrison; provided, always, that said Morrison shall pay to the mortgagee the sum of $1,400, the amount of said notes, with interest, as provided in said notes, at the times and places mentioned in said notes, with the right to enter into said store and take possession of said property on the non-payment of said notes, or in case the said mortgagees at any time deem themselves unsafe, and sell the same, for said debt." It appears that the value of the stock of goods covered by said mortgage was $8,000, and that upon and after the execution of said mortgage, Morrison remained and continued in possession of said store, and continued to sell and dispose of the goods as before, upon his own account; and between the date of said mortgage, December 13, and the time of the death of Morrison, December 26, 1871, he sold goods from said store to the amount of $979.96, and deposited, used and paid out the money received as before the giving of said mortgage, and bought other goods, and put the same into said store, to the amount of $200 or $300.

The referee found that the said chattel mortgage was, in fact, given in good faith, to secure the plaintiffs' debt, and not with intent to hinder or defraud creditors, and that said Morrison died intestate, insolvent and bankrupt; and he directed judgment for the plaintiffs for the

possession of said goods, or that they should recover the value thereof, $2,000. The defendant duly filed and served exceptions to the report of the referee, and appealed from the judgment, to this court.

_R. Bullard_, for the appellant.

*Wm. Ruger*, for the respondents.

E. DARWIN SMITH, J. The chattel mortgage in question in this case, I think, was clearly fraudulent as against creditors, upon the face of the mortgage and the undisputed facts of the case, within the principles asserted in the cases of *Edgell* v. *Hart*, (5 *Seld.* 213 ;) *Gardner* v. *McEwen*, (19 *N. Y.* 125 ;) *Ford* v. *Williams*, (24 *id.* 359,) and *Russell* v. *Winne*, (37 *id.* 593.) A fair interpretation of the mortgage itself, I think, implies or involves an agreement and understanding between the parties that Morrison should go on with the store, selling goods on his own account, and replenishing the same from time to time, precisely as he had theretofore done, and without respect to the mortgage, till the notes, or one of them, which the mortgage was given to secure should fall due. The mortgage covered about $8,000 worth of goods. The plaintiffs' debt was $1,400. The mortgage was to be a continuing lien and security upon "the stock or goods to be thereafter brought into the store." This provision imports that new goods were expected to be brought into the store, to replace those sold, so that the lien should be continued, and transferred from those sold to the new goods thereafter to be brought into the said store. The lien was thus a fluctuating one from old goods as sold to new goods substituted in their place. This was the clear purpose and intent of the parties, as fairly inferable from the terms of the mortgage itself.

The case is within the principles and facts asserted in

*Mittnacht* v. *Kelly*, (3 *Keyes*, 407,) where the mortgage was upon a whole stock of goods, wares, &c., in the mortgagor's store, "with the increase and decrease thereof;" and where, as in this case, the mortgagor was to remain in possession until default of payment, &c. Judge Parker, in giving the opinion of the court, said: "The mortgaging the whole stock in trade—the whole concern forming the grocery and liquor store, with the increase and decrease thereof, and providing for the continued possession of the mortgagor, can have no other meaning than that the mortgagee should all the time retain a lien on the whole stock by way of mortgage—the mortgagor making purchases from time to time, and selling off in the ordinary manner, the intent being not to create an absolute lien upon any property but a fluctuating one, which should open to release that which should be sold, and take in what should be newly purchased."

This was just such an arrangement as was held, in *Edgell* v *Hart*, to render the mortgage void. All the judges of the Court of Appeals concurred in this decision; and I cannot see any substantial distinction between that case and this. The referee, it is true, finds that there was no arrangement made in reference to Morrison selling the goods mortgaged, and the plaintiff had no actual knowledge that he had sold any. This finding is in conflict with the positive testimony of the attorney who drew the mortgage and was present at the time of its execution and delivery; but there is a conflict between his testimony and that of the plaintiffs' agent who took the mortgage, on this point; and the referee's finding, as between the two witnesses, if that was all the evidence in the case, on the subject, could not be disturbed. The referee probably intended nothing else by this finding, than to negative the fact of an express agreement, in words, that the mortgagor should continue to sell the goods. But the proper inference from

all the facts of the case, connected with the provisions, in the mortgage—the fact of the actual sales, and the circumstances of the case—all, I think, imply an agreement or understanding between the parties that the sales in the store, and the business of the store, should continue and proceed as before the giving of the mortgage. An agreement implied, understood and recognized between parties, is just as valid an agreement as if made in express words. In twelve days after this mortgage was given, the mortgagee had sold from said store goods to the amount of $979.96, and added to the stock goods to the amount of $200 to $300. Was not this done just as the parties mutually intended and expected when the mortgage was given, and did not the plaintiff assent to such a course of business? Quite clearly, I think, this must be presumed from the facts and circumstances of the case, and this was doubtless done by the mortgagor upon his understanding of the agreement under which the mortgage was given.

If necessary so to hold, I should think this judgment should therefore be reversed on the facts. The referee's finding that it was not agreed that Morrison should go on and sell the goods as before the execution of the mortgage, I think, is in conflict with the decided weight of the evidence. The positive testimony of the witness Hadden, is, I think, strongly corroborated by the testimony and facts of the case. This witness testified that he read the mortgage in the presence of Morrison and Havell, the plaintiffs' agent; that he read the continuing clause, and Morrison said, "that is all right, but I am to continue to sell right along;" and Havell said, "certainly."

The plaintiffs' agent simply denies that he said so; but in view of all the facts of the case, I think the positive affirmative testimony of Hadden should rather be credited. He had no interest in the matter, was an attorney simply called on to draw the mortgage, and was

acting for both parties, and had no motive to misstate the facts. His testimony is most consistent with the acts and conduct of the parties and the transparent character of the whole transaction.

The judgment should be reversed, and a new trial granted; costs to abide the event.

TALCOTT, J., concurred.

MULLIN, P. J., dissented.

Judgment reversed, and new trial granted.

[FOURTH DEPARTMENT, GENERAL TERM, at Rochester, April 1, 1873. *Mullin, Talcott* and *E. D. Smith,* Justices.]