MORTIMER F. REYNOLDS, Appellant, *v.* DEWITT C. ELLIS, as Assignee, etc., et al., Respondents.

103  115
113  531
103  115
130  427

103  115
d161  506

A lease of a store to a retail merchant contained a clause declaring that the lessor should have a lien, as security for the rent, upon the goods and other personal property brought upon the demised premises, belonging to the lessee, and providing for the enforcement of the lien by sale. The clause concluded thus: "Such lien, however, shall not be enforced against any property which, being a part of the stock in trade, shall

have been sold in the regular course of business." It was agreed between the parties that the lessee should remain in possession of the stock of goods and sell the same, using the proceeds, and this he did with the knowledge of the lessor. Subsequently the lessee made a general assignment for the benefit of creditors. The assignee, without knowledge of the clause in the lease, sold the stock of goods. In an action by the lessor to subject the proceeds to the payment of the rent, *held,* that the provision, while valid as between the parties, was in fraud of the rights of the creditors of the lessee, and, therefore, the assignee had authority to treat it as void (Chap. 314, Laws of 1858); that it was immaterial when the debt preferred by the assignment was created, whether before or after the execution of the lease; it was sufficient that the relation of debtor and creditor existed at some time while the goods remained in the possession of the debtor (2 R. S. 136, § 6); and that, therefore, the action was not maintainable.

(Argued June 3, 1886; decided October 5, 1886.)

APPEAL from judgment of the General Term of the Supreme Court, in the fifth judicial department, entered upon an order made October 31, 1884, which affirmed a judgment in favor of defendants, entered upon a decision of the court on trial at Special Term. (Reported below, 34 Hun, 47.)

This was an equitable action, brought by the appellant for the purpose of subjecting the proceeds of certain chattels theretofore sold by the defendant Ellis as assignee, etc:, to the payment of rent due and to become due from the defendant H. F. Van Dake.

It appeared upon the trial that in March, 1879, the plaintiff, as lessor, and H. F. Van Dake, as lessee, executed a lease by which the former let, and the latter agreed to take certain premises for a boot and shoe store for the term of five years from the 1st of April, 1879, at the rent of $2,000 for the first year, and a greater sum thereafter, payable monthly in advance, with interest after three days from maturity, and in case of default in payment, or seizure of the goods and merchandise, or other personal property in or upon the premises, by virtue of any writ, judgment, execution, assignment or otherwise, the whole amount of such rent and interest agreed to be paid should immediately become due and payable,

and to that should be added any sums due for water rates or gas. Then followed this clause : " And it is further agreed, that the lessor shall have a lien as security for all the rent, and interest, gas bills and water rates aforesaid, or for any damage to building due from lessee, upon all goods, wares, chattels, implements, fixtures, tools, and all other personal property, which are, or may be put on the demised premises, belonging to the lessee, or to any one holding or claiming the demised premises, or any part thereof under him as assignee, under-tenant or otherwise ; and such lien may be enforced on the non-payment of any of said rent, interest, water rent or gas bills by the taking of such 'property and the sale thereof in the same manner as in case of a chattel mortgage on default thereof; such sale to be made upon six days' notice posted upon the demised premises, or served upon said lessee. Such lien, however, shall not be enforced against any property, which, being a part of stock in trade, shall have been sold in the regular course of business."

It was found by the trial judge (eleventh finding), that at the time of the execution of this lease it was agreed between the parties thereto that the lessee " should remain in possession of the said mortgaged goods in said store, and that he might sell the goods covered by said mortgage, in said store, and use the proceeds in his business, buying other goods with the money as opportunity offered, and using the proceeds of the sales to meet his liabilities, and in the prosecution of his business, and in supporting his family and paying his hired help ;" and also (twelfth finding), " That at the time said chattel mortgage lease was executed, the said Henry F. Van Dake was in possession of said store and all the goods therein, and thereafter continued in possession of said store and of the mortgaged goods, and continued to deal with the said mortgaged property, consisting chiefly of boots and shoes, in which he was a retail dealer, as he had been accustomed to do before the giving of the chattel mortgage lease, buying and selling boots and shoes as opportunity offered, and using the proceeds of his sales in the prosecution of his business, and in the support of his family, and in

paying his hired help, in all respects as if no mortgage were in existence, all of which was done with the knowledge and approval of the plaintiff; and that the plaintiff never had possession of any of the goods covered by said chattel mortgage lease."

This condition of affairs continued until the 5th of January, 1881, when H. F. Van Dake made general assignment to defendant DeWitt C. Ellis, of all his property, including that upon the leased premises, for the benefit of his creditors, among whom as a preferred creditor was the other defendant, Harriet S. Van Dake. On the same day, and without notice, actual or constructive, of any claim on the part of the plaintiff, Ellis, as assignee, took possession of the property, and soon thereafter sold and converted it into money, realizing over and above expenses about $2,000. Afterward, but before the commencement of this action, the plaintiff demanded of the assignee, either payment of the rent accrued and due, " or delivery of the stock of goods, fixtures and other personal property in the store, to him as such lessee; claiming a right and lien under said lease prior and superior to that of said Ellis under the assignment."

Mrs. Van Dake's debt accrued prior to the lease, and is greater than the proceeds of the assigned property. The plaintiff asked judgment that he be declared to have a prior lien upon the assigned property and its proceeds, and that he be paid therefrom $1,833.33 rent actually due, and $6,966.66 which became due by reason of default on the part of the lessee.

The trial court, as conclusions of law, found:

"*First.* That the said plaintiff had no lien on the goods in said store at the time the said assignment was made, as against the said assignee and the creditors of the defendant Henry F. Van Dake.

"*Second.* That the said chattel mortgage clause in said lease was absolutely void as against the assignee and creditors of the defendant Henry F. Van Dake.

" *Third.* That said chattel mortgage clause in said lease is fraudulent in law, as against the assignee and creditors of the said Henry F. Van Dake.

" *Fourth.* That the complaint be dismissed with costs against the plaintiff."

The plaintiff excepted to these several conclusions of law.

*J. A. Stull* for appellant.  As between plaintiff and defendant, Henry F. Van Dake, the lease was a valid instrument, and all its provisions, including the lien clause in question, were in force and binding upon him as lessee before and at the time he executed his general assignment, and ever since. (*McCaffrey* v. *Wooden,* 65 N. Y. 459; *Wisner* v. *Ocumpaugh,* 71 id. 113; *Hale* v. *Omaha Nat. Bk.,* 49 id. 627.) The wife of ·Henry F. Van Dake could not, as a general creditor, attack the lease or prevent its enforcement, either on the ground that it had not been filed in the proper clerk's office, or on the ground that it was fraudulently executed. (*Hayman* v. *Jones,* 7 Hun, 238; *Thompson* v. *Van Vechten,* 27 N. Y. 568; *Jones* v. *Graham,* 77 id. 628; *Niagara Co. Nat. Bk.* v. *Radcliff,* 17 id. 584.) Even if the lease be regarded merely as a chattel mortgage, the only ground on which it can be attacked by the only other defendant — De Witt C. Ellis, as assignee of Henry F. Van Dake for the benefit of his creditors — is fraud in its execution. (*Van Heusen* v. *Radcliff,* 17 N. Y. 582, 584; *In re Collins,* 12 Nat. Bk. Reg. 379; *Slade* v. *Van Vechten,* 11 Paige, 21; Burrill on Assignments [4th ed.], 589.) Such an assignee cannot defend successfully against a chattel mortgage on the ground that it has not been filed according to the statute. (Laws of 1833, chap. 279, as amended by Laws of 1879, chap. 418; *Niag. Co. Nat. Bk.* v. *Lord,* 33 Hun, 564; *Van Heusen* v. *Radcliff,* 17 N. Y. 582, 584; *Southard* v. *Benner,* 72 id. 424; 24 Hun, 49.) The lien-clause in the lease did not constitute a chattel mortgage, so as to subject the lease, or the plaintiff's rights thereunder, to the provisions of the several statutes regarding either the filing of chattel mortgages (Laws of 1833, chap. 279, as amended by Laws of 1879, chap. 418), or the fraudulent conveyances or transfers of personal property. (3 R. S. [7th ed.] 2328, part 2, chap. 7, title 2, § 5; *McCaffrey* v. *Wooden,* 62 Barb. 322–23; *Butler* v. *Miller,* 1 N. Y. 496;

*Shuart* v. *Taylor*, 7 How. Pr. 251 ; *Porter* v. *Parmly*, 43 id. 445 ; *S. C.*, 34 N. Y. Supr. 398 ; Jones on Chat. Mort., §§ 8, 9, 11 ; *Parshall* v. *Eggart*, 52 Barb. 367 ; *Brown* v. *Bement*, 8 Johns. 96 ; *Langdon* v. *Buell*, 9 Wend. 80 ; *Patchin* v. *Pierce*, 12 id. 61 ; *Sawyer* v. *Fisher*, 32 Me. 28 ; *Gushee* v. *Robinson*, 40 id. 28 ; *Shaw* v. *Wiltshire*, 65 id. 485 ; *Metcalf* v. *Fosdick*, 23 Ohio, 114 ; *Groton Manuf. Co.* v. *Gardiner*, 11 R. I. 626 ; *Dalton* v. *Landahn*, 27 Mich. 529 ; Jones on Chat. Mort., § 11 ; *Southard* v. *Benner*, 72 N. Y. 427 ; *City Bk.* v. *Westbury*, 16 Hun, 458 ; *Otis* v. *Hill*, 8 Barb. 102.) The General Term erred in holding that the plaintiff was not in as good condition to maintain this action as he would have been if his lease had been a chattel mortgage ; and also, that no actual lien existed against the property at the time it was taken in custody by the assignee ; and that the equities of the creditors are just as great as those of the plaintiff, and the court has no power to prefer one creditor over another. (1 Pomeroy's Eq. Jur. 145–148, §§ 165, 166, 167 ; 2 id., § 1233 *et seq.*, and notes ; *Brace* v. *Duchess of Marlborough*, 2 P. Williams, 491 ; *Ex parte Knott*, 11 Ves. 609, 617 ; 3 Pomeroy's Eq. Jur. 230, 231, § 1233 ; id. 233, § 1235 ; *Holroyd* v. *Marshall*, 10 H. of L. Cas. 191 ; *McCaffrey* v. *Wooden*, 65 N. Y. 465–7 ; Jones on Chat. Mort., §§ 170–175 ; *Payne* v. *Wilson*, 74 N. Y. 348 ; *Hale* v. *Omaha Nat. Bk.*, 49 id. 626 ; *Chase* v. *Peck*, 21 id. 581 ; *Whiting* v. *Eichelberger*, 16 Iowa, 422 ; *Lynch* v. *Utica Ins. Co.*, 18 Wend. 236 ; *Husted* v. *Ingraham*, 75 N. Y. 251, 257 ; *Boorman* v. *Wis., etc., Co.*, 36 Wis. 207 ; *Mitchell* v. *Winslow*, 2 Story, 630 ; *Hale* v. *Omaha Nat. Bk.*, 49 N. Y. 634.)

*John M. Davy* for respondents. If the mortgagee intended the mortgage to operate as a valid security against the creditors of the mortgagor, he should have divested the mortgagor of the possession of the goods, or the mortgage should have been filed as required by law. (*Yenni* v. *McNamee*, 45 N. Y. 621 ; *Thompson* v. *Van Vechten*, 27 id. 568 ; *Steele* v. *Benham*, 84 id. 638 ; *Topping* v. *Lynch*, 2 Robt. 484.) The fraudulent

nature of the mortgage consisted in giving the mortgagor credit by allowing him to retain possession of the mortgaged goods, and to sell them and to use the proceeds in his business and otherwise, thereby inducing parties to give him credit. (*Potts* v. *Hart,* 99 N. Y. 172; *Brackett* v. *Harvey,* 91 id. 214; *Southard* v. *Benner,* 72 id. 424; *Russell* v. *Winne,* 37 id. 591.) The assignee in this case represents the whole body of creditors, and he had a right in their behalf to impeach the validity of the mortgage and show that it was fraudulent and void. (*Southard* v. *Benner,* 72 N. Y. 427; *Ball* v. *Slafter,* 26 Hun, 354; *S. C.,* 98 N. Y. 622; *Hard* v. *Milligan,* 8 Abb. N. C. 59; *Southard* v. *Pinckney,* 5 id. 184; *McCaffrey* v. *Wooden,* 65 N. Y. 465.) At common law there could be no lien upon goods without possession. (3 Pars. on Cont. 250; Willard's Eq. Jur. 123; *Black* v. *Bogert,* 65 N. Y. 601; *Mc-Farland* v. *Wheeler,* 26 Wend. 467; *Grinnell* v. *Cook,* 3 Hill, 485; *Coryell* v. *Perrin,* 6 Robt. 40; *Walther* v. *Wetmore,* 1 E. D. Smith, 24.)

DANFORTH, J. Upon this appeal the expectation of success seems to rest chiefly upon a supposed distinction between the clause in question and a chattel mortgage. It is upon the appellant's points styled a "lien clause," and the contention is that as it does not purport "to pass the title to the property, it cannot be said to be a mortgage, or a conveyance intended to operate as a mortgage," within the provisions of law in regard to the filing of chattel mortgages (Laws of 1833, chap. 279; Laws of 1879, chap. 418), or those which relate to fraudulent conveyances or transfers of personal property. (2 R. S., tit. 2, part 2, chap. 7, p. 136, § 5.)

No question upon such supposed distinction appears to have been presented upon the trial, but on the contrary the complaint asks that payment "be made out of the mortgaged chattels; that the assignee be enjoined from disposing of said mortgaged chattels," and that "a receiver of said mortgaged chattels and the proceeds thereof be appointed." So, while it is impossible to tell from the record how much of the com-

plaint is admitted or what is denied, it is apparent that such was the understanding of the defendants, for the instrument is repeatedly referred to as " a chattel mortgage lease," and the goods as " mortgaged goods," and want of filing of the instrument and the agreement made at the time of its execution, that notwithstanding its provisions the lessees might continue to deal with the property in all respects " as if no mortgage was in existence," are set up as affirmative defenses. In the same language the trial judge deals with the case in his findings, and there was no request for any different finding or interpretation. But I do not think it is material to inquire how the paper may be characterized. Its form was, no doubt, devised in order to give by contract to the landlord of the demised premises that priority for the collection of rent which once existed by statute, but which the legislature had at the time in question abolished (Laws of 1846, chap. 274), thus leaving the landlord to take his place with other creditors, and a debt for rent to be enforced like other obligations. What then is the effect of the contract as expressed by the clause lying at the bottom of this controversy. It cannot be doubted that it was, as between the lessor and lessee, good as a contract not only as to property in existence and on the demised premises when the lease was executed, but as to that afterward acquired and brought on to them. A similar agreement was examined in *McCaffrey* v. *Wooden* (65 N. Y. 459), and a taking by the lessor of property not in existence when the lease was made, justified upon the ground that in substance it had in equity all the characteristics of a mortgage, or of an equitable lien, which for the purposes of that case was said to be its equivalent. There the adverse party was the lessee. That doctrine was applied in a similar action (*Wisner* v. *Ocumpaugh*, 71 N. Y. 113), against a person whose relation to the demised premises precluded him from acquiring any rights adverse to those of the lessor, and who, therefore, was in no better position than the lessee.

Here the question is in equity, and is raised by the lessor against an assignee for the benefit of the creditors of the lessee.

In the cases cited the lessor had obtained possession of the things in dispute, and the first decision turned upon the validity of the agreement as to non-existent property; the other upon the priority of the plaintiff. So in *Hale* v. *Omaha Nat. Bk.* (49 N. Y. 626), there was an agreement for a future lien, and this was held to be sufficient against a defendant who made no title to the property as purchaser, creditor or otherwise, and had nothing but a naked possession tortiously acquired. In other words, the defendant showed no right to question the plaintiff's claim. Here the assignment to the defendant is conceded to be valid, and it is found that under it he had taken possession of the property and actually sold it without notice of the plaintiff's claim, or the agreement upon which the claim was made; but notwithstanding all this he has still the avails of the property in his hands, and if the appellant is right in his contention that the defendant's position is not better than that of the lessee, the plaintiff's lien will, upon general principles of equity, follow those proceeds.

We cannot agree, however, in that contention: (1). The defendant represents creditors, and may treat as void all agreements made in fraud of their rights. (Laws of 1858, chap. 314.) He has greater power for this purpose than the creditor himself. The creditor can assert no right until by judgment and execution he has a lien, or a right to a lien, upon the specific property; but in favor of an assignee for his benefit, the legislature have substituted a statutory right in place of these conditions. (*Southard* v. *Benner*, 72 N. Y. 424.) The defendant availed himself of this right, and upon the facts found by the trial judge, his action in so doing must be upheld. There was not only no delivery or change of possession of the things covered by the agreement, but it was understood between the parties that there should be neither. It was, therefore, void both at common law (*Twyne's Case*, 3 Coke, 80) and by statute. (2 R. S. 136, § 5.) It is true, as the appellant says, the clause is not in express terms characterized as a mortgage, nor are the words "sale," "transfer" or "assignment," to be found therein, but that does not matter. It takes effect as a

mortgage, and the "lien as security" is given by agreement, or to take the exact words, "it is" between the parties "further agreed" to that effect. While its object may have been to give one creditor priority over another creditor, it also involves a secret trust in favor of the owner of the goods, and forms the very cover of fraud which the statute condemns by declaring that "every assignment of goods and chattels by way of mortgage or security, or upon any condition whatever," unaccompanied by delivery, "and followed by an actual and continued change of possession, shall be presumed to be fraudulent, as against the creditors of the vendor." Nor is it of any consequence when the debt provided for by the assignment was created, whether before or after the lease was executed. It is enough that the relation of debtor and creditor existed at some time whilst such goods and chattels remained in possession of the vendor or assignor. (2 R. S. 136, § 6.) It is inconsistent not only with this statute but with the principles of equity, that such a lien should be successfully set up, to the exclusion of *bona fide* creditors, and we are referred to no case where it has been done. The equity of the defendant as a mere representative of creditors is at least equal to that of the plaintiff, while the former has superadded to his equity the legal advantage of possession, and the statutory authority to treat as void a conveyance in fraud of the rights of creditors. In these respects his position is better than that of the lessee, and equal to that of a creditor with judgment and execution.

But the learned counsel for the appellant argues that there was no evidence to sustain the eleventh finding (*supra*), viz.: that showing a fraudulent arrangement at the time of the execution of the lease, and, therefore, that the provisions of the act of 1858, as to the powers of assignees, are not brought into operation. Conceding it to be valid between the parties, as we have done, we think it fraudulent upon its face as to creditors, and, therefore, void as to the defendant, their assignee. The lessee was a retail merchant. The lease in terms permits him to sell his stock in the regular course of business, and relieves so much of it from the lien. He in fact carried on the business

the same after the lease as before. The stock of goods fluctuated, and the plaintiff had notice that it would do so when he gave the lease ; he also knew that the defendant was to, and did continue the business in that way. There was no restraint upon him in regard to it, or the disposition of the money when the goods were sold. We think the finding was fully justified by *Edgell* v. *Hart* (9 N. Y. 213), and *Gardner* v. *McEwen* (19 id. 123).

The argument for the appellant suggests no ground on which a court of equity can interfere in his favor.

The judgment should, therefore, be affirmed.

All concur, except MILLER, J., absent.

Judgment affirmed.