ELIZA W. RANDALL, Respondent, v. ARINGTON H. CARMAN, as Assignee for the Benefit of Creditors of SEWARD S. SMITH, Appellant, Impleaded with SEWARD S. SMITH.

*Chattel mortgage — an implied agreement that the mortgagor may sell for his own benefit renders the mortgage void.*

An agreement between a chattel mortgagee and the mortgagor that the mortgagor may sell the mortgaged property for his own benefit will render the mortgage void as to the mortgagor's creditors, whether the agreement is expressed in the mortgage itself or exists by tacit understanding and arrangement between the parties.

A chattel mortgage was executed, pursuant to a contract for the sale of a stock of goods, which contained the following clause : The balance (of the purchase money) "to be secured by a chattel mortgage to cover said stock of goods and all after-acquired goods for sale in said store, and said debt to be paid in installments of fifty dollars per month, or as near said sum as the profits of the business will warrant." Thereafter the mortgagor made a general assignment for the benefit of his creditors.

In an action brought to foreclose the chattel mortgage given in pursuance of said contract,

*Held,* that the chattel mortgage was fraudulent as to the creditors of the mortgagor and was void.

APPEAL by the defendant, Arington H. Carman, as assignee, etc., of Seward S. Smith, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Suffolk on the 29th day of December, 1894, upon the decision of the court rendered after a trial at the Kings County Special Term.

This action was brought to foreclose a chattel mortgage bearing date June 20, 1892, given by one Seward S. Smith to the plaintiff's assignor, one Henry L. Randall, to secure the payment of a part of the purchase price of a stock of goods sold by said Randall to said Smith. The condition of the mortgage was to pay $2,300 accord-

ing to the terms of a promissory note executed simultaneously therewith, and by its terms it covered the stock of goods in the store leased by Smith from Randall and " all such goods and merchandise as said Seward S. Smith may hereafter acquire and put into said store to enable him to continue his said business." It also provided that until default, the mortgagor should continue " in the quiet and peaceable possession of the said goods and chattels and the full and free enjoyment of the same." The following is a copy of the promissory note referred to in the mortgage :

" $2,300.                    PORT JEFFERSON, N. Y., *June* 20, 1892.

" For value received I promise to pay to the order of Henry L. Randall, the sum of twenty-three hundred dollars in manner following to wit: the sum of fifty dollars during each and every month until said principal sum shall be paid, or as near said sum monthly as the profits of his store business will warrant, the whole sum to be paid not later than the 1st of July, 1897.

" S. S. SMITH."

The note and mortgage were executed and delivered pursuant to a written agreement for the sale of the stock of goods, and which provided, among other things, that the balance of the purchase money was " to be secured by a chattel mortgage to cover said stock of goods and all after-acquired goods for sale in said store, and said debt to be paid in installments of fifty dollars per month, or as near said sum as the profits of the business will warrant. The said Seward S. Smith agrees to keep said stock up to its present variety and amount, and in case of failure to do so said Henry L. Randall may exercise his rights under the chattel mortgage to be executed. Said chattel mortgage shall bear the date of this agreement, and said lease shall bear date the 1st day of September, 1892."

On August 3, 1892, Smith executed to the defendant Carman a general assignment for the benefit of creditors. During the time he was in business he kept the stock up in variety and amount to what it was at the time of the sale. His sales during that period amounted to upwards of $24,000, and he paid upon the note and mortgage the sum of $437.

It was the claim of the assignee that the mortgage was void as against the creditors of the mortgagor, but the court held that it

was a valid lien upon such part of the original stock of goods as was transferred to the assignee.

*T. M. Griffing,* for the appellant.

*Thomas J. Ritch, Jr.,* for the respondent.

BROWN, P. J. :

The trial court decided that the provisions in the mortgage relating to after-acquired property rendered it, as to such property, void against the assignee. It found, however, that the execution and delivery of the mortgage was an honest transaction, and held the mortgage to be a valid lien upon such of the mortgaged property as was transferred to the assignee, and the question presented upon this appeal is whether this latter ruling can be sustained in view of the undisputed agreement between the parties relating to the mortgagor's power to sell the property.

The rule has been settled by numerous authorities that an agreement between the mortgagee and mortgagor that the latter may sell the mortgaged property for his own benefit will render the mortgage void as to the mortgagor's creditors, and it is immaterial whether the agreement is expressed in the mortgage itself or exists by tacit understanding and arrangement between the parties. (*Mandeville* v. *Avery,* 124 N. Y. 376; *Reynolds* v. *Ellis,* 103 id. 115; *Potts* v. *Hart,* 99 id. 168; *Southard* v. *Benner,* 72 id. 424; *Robinson* v. *Elliott,* 22 Wall. 524.)

There is nothing in *Brackett* v. *Harvey* (91 N. Y. 214) which is in conflict with this rule. That case decided that a chattel mortgage was not rendered void by an agreement by which the mortgagor was permitted to sell the mortgaged property and apply the proceeds to the payment of the mortgage debt and as subsidiary thereto an agreement by the mortgagee to take and apply on the debt good business paper given to the mortgagor on sales made on credit, and that the mortgagors might use a part of the avails of such sales to replenish their stock, the substituted property being placed under the lien of the mortgage by monthly renewals thereof.

The rule that agreements which permit a mortgagor to sell for his own benefit are necessarily fraudulent, was distinctly recognized by the court. Such agreements, it was said, " strip the mortgage of its

whole force as a security to the holder and make it merely a shield to the debtor."

In this case it is a necessary conclusion from the provision of the mortgage, the note and the written agreement between the parties for the purchase and sale of the store, that the mortgagor was to sell the stock in the usual way of a retail store, and out of the profits of the business pay to the mortgagee fifty dollars a month, or more or less, according as the profits warranted a larger or smaller payment. Such an agreement, we think, was necessarily fraudulent. The provision for the payment of fifty dollars "from the profits" implies an agreement that the mortgagor may, out of the proceeds of the sale of the mortgaged property, pay the rent of the store and the expenses of the business. This was a provision for him to use the property for his own benefit. Moreover, there was no restriction as to sales on credit, and bad debts contracted from sales so made would necessarily be considered at some time before the maturity of the mortgage in determining the profits of the business. The mortgagor was at liberty to have sold out the whole of the mortgaged property on credit. The accounts of such sales would not, under the agreement between the parties, be transferred to the mortgagee and applied upon his debt, but would be collected by the mortgagor and paid over to the mortgagee only in case "the profits" of the whole business warranted it.

That an agreement which would permit such results is fraudulent as to creditors of the mortgagor, is beyond question. (Jones on Chat. Mort. [4th ed.] § 401 ; *City Bank* v. *Westbury*, 16 Hun, 458.)

It tends to mislead, delay and hinder creditors in collecting their debts, and, as was said in *Brackett* v. *Harvey* (*supra*), " opens the door to fraud and permits the mortgagor to use the property for his own benefit, utilizing the mortgage as a shield against other creditors."

The judgment must be reversed, and as a new trial would be useless, the complaint is dismissed, with costs.

DYKMAN and PRATT, JJ., concurred.

Judgment reversed, and complaint dismissed, with costs.