In the Matter of the Accounting of FRANK J. HONE, as Receiver of CHARLES F. LIGHTHOUSE, a Judgment Debtor, Appellant; THOMAS J. SWANTON et al., Respondents.

1. DEBTOR AND CREDITOR — ASSIGNMENT OF CLAIM AGAINST UNITED STATES — DEFEASIBLE BILL OF SALE. If a contractor with the United States for the furnishing of goods to the government, in good faith assigns the contract and all the moneys due or to become due thereon, to certain of his creditors, to secure an honest debt or liability, and surrenders his manufacturing plant to them, in order that they may fill the contract and reimburse themselves by a sale of goods to be manufactured by them, and files a bill of sale of the property transferred, absolute in form, but with the understanding that in case their debt and the claims for which they are liable are paid the property shall revert to the assignor, the assignment, although it can be disregarded by the government, is good as between the parties and vests the assignees, as against the contractor or any of his other creditors having notice of the assignment, with the right to future payments under the contract, for goods produced by their labor and capital, subsequent to and not affected by the bill of sale, and delivered by them to the government.

2. RECEIVER IN SUPPLEMENTARY PROCEEDINGS — ERRONEOUS APPLICATION OF FUND. If a receiver appointed in proceedings supplementary to execution against the assignor of such a contract, on judgments in favor of creditors other than those to whom the contract had been assigned, receives, after notice of the assignment, payment from the government for goods produced by the assignees of the contract, and of his own motion applies it upon the judgments under which he was appointed, he may be compelled, on an accounting in the state court by which he was appointed, to refund the amount to the assignees.

3. DUTY AND LIABILITY OF RECEIVER IN SUPPLEMENTARY PROCEEDINGS. It is the duty of a receiver in supplementary proceedings, when other parties than the creditors he represents make a claim upon him for the fund in his hands, or any part of it, to take the advice and direction of the court. If he undertakes to determine for himself that the fund

belongs to the creditors in the judgments under which he is appointed, in preference to other parties who claim it and of whose claims he has notice, he makes the distribution at his peril.

*Matter of Hone*, 5 App. Div. 619, affirmed.

(Argued June 23, 1897; decided October 5, 1897.)

APPEAL from an order of the Appellate Division of the Supreme Court in the fourth judicial department, entered April 23, 1896, which affirmed an order of the Monroe County Court.

The nature of the order and the facts relating thereto are stated in the opinion.

*Elbridge L. Adams* for appellant. The County Court had no power to order the receiver to pay the proceeds of the draft to Swanton and Acker, after he had distributed the same to the judgment creditors whom he represented. (*Becker v. Torrance*, 31 N. Y. 631; *Goddard v. Stiles*, 90 N. Y. 199; Code Civ. Pro. § 2450; *In re Potter*, 44 Hun, 197; *Frees v. Ford*, 6 N. Y. 176.) The instrument under which Swanton and Acker claim is a chattel mortgage, which is void as against Lighthouse's creditors and this receiver. (*Southard v. Benner*, 72 N. Y. 424; *Brackett v. Harvey*, 91 N. Y. 214; *Potts v. Hart*, 99 N. Y. 168; *Mandeville v. Avery*, 124 N. Y. 376; Jones on Chat. Mort. [4th ed.] § 401; *Randall v. Carman*, 89 Hun, 84; *Greenbaum v. Wheeler*, 90 Ill. 296; *Place v. Langworth*, 13 Wis. 629; *State v. Muller*, 10 Mo. App. 87; *Chaphard v. Bayard*, 4 Minn. 533.) The assignment to Swanton and Acker of the contract with the United States, and of moneys due or to become due from the government, being forbidden by law, passed no title. (Code Civ. Pro. § 1910; U. S. R. S. § 3477; *Goodman v. Niblack*, 102 U. S. 556; *Erwin v. U. S.*, 97 U. S. 392.)

*Walter S. Hubbell* for respondents. The appeal should be dismissed, because the receiver is not an aggrieved party, under section 1294 of the Code of Civil Procedure. The judgment creditors appeared in the proceeding but did not

appeal. (*Connor* v. *Beldin*, 8 Daly, 257; *People* v. *St. N. Bank*, 77 Hun, 159; 150 N. Y. 563; High on Receivers, 147, 148; *People* v. *A. L. & T. Co.*, 150 N. Y. 117.) The decree appealed from was right, in directing the receiver to pay over the fund to Swanton and Acker, because they were and always had been entitled to it. (*O. S. S. Co.* v. *Otis*, 100 N. Y. 446; *York* v. *Conde*, 147 N. Y. 486.) The respondents were properly in court and entitled to be heard as parties to the proceeding. (*People* v. *Bank of Dansville*, 39 Hun, 187; *Corey* v. *Long*, 12·Abb. [N. S.] 426.)

O'BRIEN, J. The receiver has appealed from an order which directed him to account and pay over to Swanton and Acker the sum of $1,920, less commissions, being the amount that came to his hands under the following circumstances: He was appointed the receiver of one Lighthouse on or about the 13th of May, 1895, in proceedings supplementary to execution, instituted by a judgment creditor. The receivership was subsequently extended to other judgments.

It appears that Lighthouse, the judgment debtor, had a contract with the United States post office department for furnishing certain mail pouches, and that at various dates between March 29, 1895, and June 29th of that year, pouches were delivered to the department to the amount of $1,920, which was audited and allowed by the department August 30th, 1895.

The mail pouches, to pay for which this sum was allowed, were produced under the following circumstances: On September 11, 1894, Lighthouse, who had the contract and the plant for manufacturing the goods, was very largely indebted to both Swanton and Acker for sums of money advanced to him, and besides they had assumed liabilities for him as indorsers and otherwise in sums still larger. On that day Lighthouse transferred to them his contract with the government, and all moneys due or to become due thereon, and also the plant, composed of machinery, stock and fixtures. This was to secure them against loss by reason of the advances they had made and the liabilities incurred. It was further

agreed that they should at once take possession of the plant, and manufacture mail bags under the contract or under any order that their debtor might thereafter procure from the government. The business with the government was to be conducted by and in the name of Lighthouse, who was to have general charge at a compensation of $30 per week, and that in case the debt of Swanton and Acker, and the claims upon which they were contingently liable, were paid in full, then the business and plant should revert to Lighthouse. Under this arrangement Swanton and Acker took possession and assumed the management and control of the business. They advanced a large sum of money for the conduct of the business, and filled the orders taken by Lighthouse in his own name. An absolute bill of sale was made to Swanton and Acker in pursuance of the arrangement, but was not filed. A second bill was made March 5, 1895, under substantially the same arrangement, which was immediately filed in the clerk's office. On the 23d of October, 1894, following the arrangement above described, Lighthouse authorized the government to send to him in care of a bank in Rochester the drafts issued for mail bags, intending that when received they should be indorsed by him and delivered to Swanton and Acker. The judgments upon which the receiver was appointed were recovered at the following dates: November 15, 1887; May 1, 1895; March 13, 1895, and August 6, 1895.

All of them, as will be seen, were recovered subsequent to the filing of the bill of sale except the first, and none of them became a lien upon any of the property transferred. It appears that in some way notice of the receivership was given to the government, and on the 12th of September, 1895, the receiver received from the post office department the draft of $1,920 in payment of the several invoices of mail bags, audited August 30, 1895, all of which were delivered and accepted on or subsequent to March 29, 1895, and subsequent to the filing of the bill of sale.

The receiver immediately applied the proceeds of the draft to the payment of the several judgments which he represented.

(in the order of priority) and of his own fees and commissions, and the costs of the supplementary proceedings and the costs recovered in the several judgments. He disbursed the fund in this manner with full knowledge of the claims of Swanton and Acker. Subsequently, and on the 27th of September, 1895, the receiver petitioned the court for an accounting and discharge, showing a balance in his hands of $106.69. Both Lighthouse and Swanton and Acker appeared upon the accounting and set forth the facts fully by answer of the former, and petition on behalf of the latter.

The court found the facts above stated and other facts, and then held as matter of law that Swanton and Acker were entitled to a decree directing the payment to them by the receiver of the sum of $1,920, less the commissions.

The transfer of the contract to supply the mail bags for the government is not questioned on the ground of actual fraud. It was, no doubt, honestly made, and while the government might disregard it, yet it was good between the parties and vested the assignees with the right to receive the money payable under it as against Lighthouse, or any of his other creditors. (*York* v. *Conde,* 147 N. Y. 486.)

Moreover, the fund represented the price of thirty-two hundred mail bags, at sixty cents each, produced under the contract by the labor and capital of the assignees. The material was furnished by the government, and the price paid represented only the cost of manufacture and the profit arising therefrom. For nearly six months before any of the bags were delivered, Swanton and Acker had taken possession of the factory and were operating it at their own expense. They made the bags from which the fund came. Lighthouse was a mere servant for them at a weekly compensation, fixed by agreement, but he had no title to the bags and no interest in them as against his assignees. There is no question in the case with respect to property in existence, when the bill of sale was made and which belonged to Lighthouse. The question relates wholly to the proceeds of the mail bags produced by Swanton and Acker while in possession and by means

of labor which they furnished and paid for themselves. The learned counsel for the receiver contends that the transaction was a chattel mortgage, constructively fraudulent by reason of the reservation that the property was in a certain contingency to revert to Lighthouse, and that a benefit was secured to him from the transaction which was unjust to his other creditors within the rule laid down in *Randall* v. *Carman* (89 Hun, 84).

It is quite doubtful if that rule has any application to this case. The possession of the plant was surrendered to Swanton and Acker with the understanding that they were to furnish the money and labor in order to fill the contract assigned to them, and reimburse themselves by sale of the stock manufactured.

Whatever might be said with respect to the property on hand at the time of the arrangement and passing under the bill of sale, it cannot apply to property or goods thereafter produced. The contractor with the government, in good faith, assigned the contract to certain of his creditors, and the latter, in good faith, furnished the capital or the labor to produce the goods and delivered them to the department. The government, either from want of knowledge of the fact that the contract had been assigned, or unwillingness to recognize it, sent the draft for the goods to the receiver of the original contractor. Conceding that the money came lawfully to his hands, yet in equity he had no right to it since it belonged to the assignees who had produced the goods.

A receiver in supplementary proceedings is an officer of the court that has appointed him the same as other receivers. The funds that come to his hands are in the custody of the court and subject to its order and direction. If the receiver undertakes to determine for himself that the fund belongs to the creditors in the judgments under which he is appointed, in preference to other parties who claim it and of whose claims he has notice, he makes the distribution at his peril. It is his duty when parties other than the creditors which he represents make a claim upon him for the fund or any part of it, to take

the advice and direction of the court. When upon his own motion he pays the fund to creditors not entitled to it as against other claimants, he must, upon an accounting, be able to justify his conduct.

In this case the County Court, from which the appointment proceeded, refused to recognize the disposition which the receiver had made of the fund that came to his hands, and held that in equity and justice it should have been paid to the assignees under the contract. While the government might refuse to recognize the assignment, yet the state courts got jurisdiction of the fund when it came to the receiver's hands and had the power to determine to whom in equity it belonged. (*Oregon Steamship Co.* v. *Otis*, 100 N. Y. 446 ; *Goodman* v. *Niblack*, 102 U. S. 556.)

In view of the fact that no money or property that ever belonged to Lighthouse entered into the production of the mail bags, but, on the contrary, they were produced by the labor of the assignees of the contract, we think that the decision of the courts below was clearly right and that the order should be affirmed, with costs.

All concur, except GRAY, J., absent.

Order affirmed.